UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ARLEN FOSTER and CINDY FOSTER,<br><br>          Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE; TOM VILSACK, in his official capacity as Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Acting Chief of the Natural Resources Conservation Service; and JACKIE BYAM[1], in her official capacity as Acting South Dakota State Conservationist,<br><br>          Defendants. | 4:21-cv-04081-RAL<br><br><br>**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(c), and 56, and in accordance with Local Rule 7.1(B), Federal Defendants, by and through undersigned counsel, submit the following Memorandum in Support of Federal Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment. Dismissal is appropriate because the Court lacks subject matter jurisdiction over this action, and because Plaintiffs have otherwise failed to state a claim upon which relief may be granted. The case must therefore be dismissed on the pleadings or upon summary judgment.

---

[1] Jackie Byam is presently the Acting South Dakota State Conservationist and is automatically substituted for Laura Broyles as the defendant in this case. See Fed. R. Civ. P. 25(d).

## INTRODUCTION

This lawsuit involves "Swampbuster," a provision in the Food Security Act of 1985 ("FSA"), that makes farmers who are otherwise eligible for specified benefits from the United States Department of Agriculture ("USDA") ineligible for those benefits if they choose to convert a wetland to agricultural production or produce an agricultural commodity on a converted wetland. Congress enacted Swampbuster to combat the disappearance of wetlands that have been converted into agricultural crop land. Swampbuster is voluntary: farmers may opt to drain their wetlands if they determine the benefit of converting their wetlands to agricultural use outweighs the loss of USDA benefits.

Plaintiffs assert that Swampbuster is unconstitutional because it purportedly regulates both intra-state waters on their property that are not subject to Congress's Commerce Power, and land and local water use that are the prerogative of the States under the Tenth Amendment. Plaintiffs also seek to re-litigate a challenge to the Natural Resources Conservation Service's ("NRCS") final certified wetland determination that Plaintiffs' land contains a wetland subject to Swampbuster.

The NRCS's final certified wetland determination on Plaintiffs' land has already been the subject of repeated levels of review, not only within the agency and the Department of Agriculture, but also in this district court and the Eighth Circuit. See Foster v. Vilsack, No. CIV. 13-4060-KES, 2014 WL 5512905 (D.S.D. Oct. 31, 2014), aff'd, 820 F.3d 330 (8th Cir. 2016), cert denied, 137 S. Ct. 620 (2017). The agency, the Department, and reviewing courts considered and rejected, among other things, Plaintiffs' argument that their land includes an "artificial wetland" not subject to Swampbuster. Plaintiffs appear to contend that the agency has acted contrary to the statute and procedural due process by not agreeing to review anew the final certified wetland determination based upon the same "artificial wetland" argument, and to stay the determination pending that

2

review. Finally, Plaintiffs seek to challenge NRCS's Swampbuster regulations themselves, asserting they violate the Congressional Review Act ("CRA") because they were not presented to Congress under the terms of that statute, and asserting that they, too, violate the statute and the demands of procedural due process.

Federal Defendants are entitled to dismissal of Plaintiffs' claims. The Court lacks jurisdiction to hear several of Plaintiffs' claims. First, Plaintiffs' facial constitutional challenge to the FSA over thirty years after it was enacted is well outside the six-year statute of limitations in 28 U.S.C. § 2401(a) that defines the government's waiver of sovereign immunity for that claim. Second, Congress made clear in the CRA that there is no waiver of sovereign immunity for that challenge to the agency's regulations. Finally, to the extent Plaintiffs are seeking judicial review of NRCS's response to their requests for review of the agency's final certified wetland determination, the agency has not denied the requests; the agency has instead requested that Plaintiffs clarify how their request conforms to the conditions imposed in the agency's regulations for obtaining such review. There is, thus, no "final agency action" under the Administrative Procedure Act ("APA") that would permit judicial review of the agency's response.

Plaintiffs' constitutional and regulatory challenges also fail on the merits. Congress may enact funding provisions such as Swampbuster under its Spending Clause powers without also relying upon its Commerce Clause power. Further, Swampbuster implicates no Tenth Amendment considerations. Plaintiffs' regulatory challenge is similarly baseless. Congress left it to the agency to determine the conditions under which a request for review of a final wetland certification would be considered. The agency has done so and promulgated regulations that permit review when (1) a natural event has caused a change in the hydrology or topography of the land that is the statutory basis for a wetland determination, or (2) the agency concurs with the affected person that the

certification is in error. Rather than comply with these regulations, Plaintiffs appear to be intent on ignoring them—and to reargue matters already considered by not only the agency and the Department, but also by reviewing courts. Because the statute stays a certification during administrative review of a certified wetland determination, permitting Plaintiffs to obtain serial reviews based upon the same arguments would permit them to obtain Swampbuster immunity in perpetuity and thereby frustrate the congressional purpose in enacting the statute. Plaintiffs' argument is therefore contrary to the statute and beyond the demands of procedural due process.

## BACKGROUND

### I.   Statutory and Regulatory Background

#### A.   Swampbuster

Congress first conditioned eligibility for USDA farm support programs on conservation of wetlands in the FSA. Pub. L. No. 99-198, tit. XII, subtit. A-C, 99 Stat. 1345, 1504-08. Under the Swampbuster provision of the FSA, farmers are ineligible for specified USDA loans, payments, and other programs if the farmer converts a wetland to agricultural production or produces an agricultural commodity on a converted wetland. 16 U.S.C. § 3821(a)-(d). Congress enacted this provision "'to combat the disappearance of wetlands through their conversion into crop lands.'" Foster, 820 F.3d at 332 (quoting Gunn v. U.S. Dep't of Agric., 118 F.3d 1233, 1235 (8th Cir. 1997)). Plant and animal species, particularly waterfowl, fish, and other wildlife, depend on wetlands for their survival. H.R. Rep. 99-271(1), reprinted in 1985 U.S.C.C.A.N. 1103, 1188. The Nation's wetlands are also necessary for flood control, water quality, and groundwater discharge. Id.

A National Wetlands Trends Study conducted by the United States Fish and Wildlife Service revealed that only 99 million acres—less than 50 percent—of the original 215 million acres of wetlands located within the 48 contiguous states remain. Id. Because the vast majority of

wetlands lost were attributable to the conversion for agricultural purposes, Congress enacted Swampbuster. Id. Swampbuster does not "make illegal the conversion of wetlands to agricultural use, but [instead] provide[s] that any agricultural production of a converted wetland would cause the farmer to forfeit his eligibility for a number of federal farm-assistance programs." Gunn, 118 F.3d at 1235. Nor does Swampbuster authorize the USDA to regulate, in any way, the use of private, non-federal land. H.R. Rep. 99-271(1), reprinted in 1985 U.S.C.C.A.N. 1103, 1188.

### B.    USDA Wetland Determinations

1.    NRCS wetland determinations.

NRCS makes technical determinations regarding wetlands within USDA. 16 U.S.C. § 3822(j); 7 C.F.R. § 12.30(a)(3). NRCS evaluates whether the land: (1) has a predominance of hydric soils; (2) has sufficient wetland "hydrology"; and (3) under normal circumstances supports a prevalence of hydrophytic vegetation. 16 U.S.C. § 3801(a)(27); 7 C.F.R. § 12.2(a). NRCS then delineates wetlands on wetland delineation maps. 16 U.S.C. §§ 3822(a)(2), (j).

NRCS initiates this process by issuing a preliminary technical determination, after which "NRCS will notify the person affected . . . and provide an opportunity to appeal the certification prior to the certification becoming final." 7 C.F.R. § 12.30(c)(1); see also 7 C.F.R. § 614.7(a)-(b). "NRCS [then] review[s] the accuracy of the determination of all lands subject to the appeal to ensure that the subject lands have been accurately delineated." 7 C.F.R. § 12.30(c)(2). After this review, NRCS issues the final technical determination. 7 C.F.R. § 614.7(b)-(c).

A landowner who is dissatisfied with this final certified wetland determination can appeal the determination to USDA's National Appeals Division ("NAD"). 7 C.F.R. §§ 12.12 § 614.8(b). The landowner will be given the opportunity to have an in-person hearing before the NAD Hearing Officer, where evidence and witness testimony can be presented. See generally 7 C.F.R. § 11.8.

After the Hearing Officer issues a decision, either the agency or the landowner may request review before the NAD Director. 7 C.F.R. § 11.9. The NAD Director will review the determination of the Hearing Officer and either remand the determination to the agency or issue a final determination. 7 C.F.R. § 11.9(d).

2.   <u>Review of final certified wetland determinations</u>.

According to the certification provisions Congress added to the FSA in 1996, final wetland certifications remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary. 16 U.S.C. § 3822(a)(4). The statute is otherwise silent as to how a person may seek review of a final certification. The USDA, therefore, adopted regulations, 61 Fed. Reg. 47019, 47036 (Sept. 6, 1996), requiring that a party seeking agency review of a final certification submit information demonstrating that one of the statutory criteria has been altered by a natural event. <u>See</u> 7 C.F.R. § 12.30(c)(6) (permitting review of a certification where "a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions"). In addition, the agency's regulations permit NRCS to review a certification "if NRCS concurs with an affected person that an error exists in the current wetland determination." <u>Id</u>. These two threshold conditions for seeking review of final certifications prevents parties from continually seeking to nullify the agency's final certified wetland determination by submitting the same information again and again, which "would be expensive for NRCS, allow endless litigation of the same issues, and undermine the wetland determination process." NAD Director Decision, Case No. 2014E000753, at 5 (June 6, 2016), available                           at                           https://usda-nad-local1.entellitrak.com/etk-usda-nad-prod-

6

temp/page.request.do?page=page.highlightedFile&id=93025&query_text=&query_text2=&citation=.

### C.    Congressional Review Act

The 1996 Congressional Review Act ("CRA"), 5 U.S.C. §§ 801-808, establishes a set of procedures by which Congress may review and overturn agency rules. The CRA provides that, before a rule can take effect, an agency must submit a report to both houses of Congress and the Comptroller General containing a copy of the rule, a concise general statement relating to the rule, and the proposed effective date of the rule. 5 U.S.C. § 801(a)(1)(A). In addressing the scope of the waiver of sovereign immunity, the CRA states that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review." Id. at § 805 (emphasis added).

## II.   Factual Background

This lawsuit follows Plaintiffs' previous challenge to the agency's 2011 final certified wetland determination on their land. There, Plaintiffs requested that this district court set aside as arbitrary and capricious under the APA the NAD Director's 2012 decision upholding the 2011 certified wetland determination. Plaintiffs contended, among other things, that the NRCS "refused to consider the effects from snowmelt of a nearby shelterbelt that causes water to drain onto Site 1," the name that the parties have used to identify the area on Plaintiffs' land containing a wetland. See Foster v. Vilsack, No. CIV. 13-4060-KES, 2014 WL 5512905, at *15 (D.S.D. Oct. 31, 2014); see also Declaration of Deke Hobbick ("Hobbick Decl."), Ex. A at 000285, 000290 (Plaintiffs' request for NAD director review arguing that "[t]his large amount of snow melts slowly in the spring" and "Appellant's contention is that the snow melt from the row of trees" drains into Site 1). In affirming the agency's certified wetland determination under the "arbitrary and capricious" standard of the APA, 5 U.S.C. § 706(2)(A), the district court rejected that challenge, ruling that

7

"the administrative record shows that NRCS did not ignore plaintiffs' findings, but rejected them based on other considerations." Foster, 2014 WL 5512905, at *15.

The district court noted that, "[w]ith respect to melting snow from the shelterbelt running off into Site 1, Michelle Burke, [an agricultural engineer with the NRCS], testified [at the NAD administrative hearing] that the possibility Site 1 could be an artificial wetland was investigated and dismissed." Id.; see also Hobbick Decl., Ex. A at 000105-106 ("One of the issues [NRCS reviewed] was the shelterbelt planted in the area.") (testimony of Ms. Burke); Ex. A at 000155-156 (testimony of NRCS employee, Eugene Preston, describing that because he was "investigating a potential artificial wetland," he modified his "soil sampling procedures to collect more data than would otherwise be required").[2] According to Ms. Burke's testimony, "in order for an area to be an artificial wetland, it would first have to be a non-wetland that was transformed over time." Foster, 2014 WL 5512905, at *15. The soil samples reviewed by the agency, however, showed that not to be the case. Id. In addition, NRCS determined that the "'necessary hydrologic conditions'" in Site 1 "'were present long before the shelterbelt existed.'" Id. (quoting administrative record). Based upon these facts in the administrative record, the district court entered summary judgment in favor of the agency, affirming the agency's 2011 wetland determination and certification. Id. at *16. The Eighth Circuit affirmed the district court's ruling, and the Supreme Court denied Plaintiffs' petition for certiorari. 820 F.3d 330 (8th Cir. 2016), cert denied, 137 S. Ct. 620 (2017).

---

[2] References to and discussion of a potential artificial wetland and/or melting snow from the shelterbelt appear throughout the NAD administrative record. See, e.g., Hobbick Decl., Ex. A at 000045, 000152, 000155, 000168-170, 000178, 000194-200, 000227-229, 000251, 000265-267, 000277-278, 000285, 000290, 000305, 000316, 000386, 001087, 001186, 001208, 001215.

Undeterred, Plaintiffs sought additional review of the 2011 wetland certification in both 2017 and 2020. See Docket 1 at ¶¶ 78-80. In response to Plaintiffs' 2017 request, NRCS advised Plaintiffs that they "must supply information that was not previously considered by NRCS" to obtain review of the agency's final certified wetland determination. See Hobbick Decl., Ex. A at 000009. In 2020, Plaintiffs submitted an engineer's report, which appeared to attempt to re-litigate the same "artificial wetland" argument that Plaintiffs previously made to the agency, Department, and reviewing courts. Docket 1 at ¶¶ 80, 130, 139. NRCS reviewed the request and did not see any assertion by Plaintiffs that there was a natural change in the topography or hydrology of Site 1, as required by the agency's regulations. Hobbick Decl. at ¶ 8. Nor did the request point to any new data or information that NRCS had not previously considered in the 2011 final certified wetland determination. Id. at ¶ 7. Accordingly, NRCS advised Plaintiffs that NRCS was unable to determine that any of the conditions mentioned in the regulations for a redetermination apply. Id. at ¶ 9. To date, Plaintiffs have not provided any further information that would permit review under the conditions set forth in the agency's regulations. Id.[3]

## III. Complaint

Plaintiffs instead brought this lawsuit. The Complaint sets forth Five Claims for Relief. See generally Docket 1. The first Claim for Relief alleges that Swampbuster is unconstitutional. Id. at ¶¶ 98-115. Plaintiffs allege that Congress exceeded its Article I Commerce Power in enacting Swampbuster and violated the Tenth Amendment by directly regulating in the area of land use and local water use, and by unlawfully conditioning "the receipt of government benefits or payments on the recipients' waiver of a constitutional right, including the right to be free of ultra vires and

---

[3] Federal Defendants file in conjunction with this motion records related to the original wetland certification and subsequent requests for review. See Hobbick Decl. at ¶ 10, Ex. A.

constitutional federal regulation." Id. at ¶ 98. The second Claim for Relief alleges that the FSA "imposes a mandatory duty to accept both Plaintiffs' 2017 and 2020 Requests to review the [agency's] 2011 Certification." Id. at ¶ 117. Plaintiffs contend that the agency's regulations, which impose the conditions discussed above before reviewing a certification, violate the CRA because they were not submitted to Congress pursuant to the CRA prior to taking effect. Id. at ¶¶ 116-121.

The remaining Claims for Relief allege that the agency's regulations governing review of wetland certifications violate the statute by imposing "conditions on Plaintiffs' right to request review of the agency's wetland certifications," and violate procedural due process "by creating an adjudicatory process which is rigged against the requester" and by "denying the requestor a meaningful opportunity to be heard on the question of whether the prior certification was wrong." Id. at ¶¶ 125, 127, 129. Plaintiffs contend that the agency acted contrary to law by refusing to reconsider their argument that Site 1 was an artificial wetland. Id. at ¶¶ 55, 80, 130, 139. Plaintiffs therefore request that the 2011 Certification be vacated and set aside. Id. at ¶¶ 133-147.

## STANDARDS OF REVIEW

### I.      Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12.

#### A.      FRCP 12(b)(1)—Lack of Subject Matter Jurisdiction

Jurisdiction is a threshold question that must be decided at the outset of every lawsuit. See Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). As noted by the Eighth Circuit, in determining whether it has jurisdiction to hear a case, a court may consider facts outside the pleadings without converting a motion to dismiss into a motion for summary judgment:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

<u>Osborn</u>, 918 F.2d at 730 (internal citation omitted). Moreover, the Court need not defer to allegations in the complaint that constitute legal questions, as those issues are within the Court's purview. <u>Ashley v. U.S. Dep't of Interior</u>, 408 F.3d 997, 1000 (8th Cir. 2005). Ultimately, the plaintiff bears the burden of proving that jurisdiction does in fact exist. <u>Osborn</u>, 918 F.2d at 730.

### B.    FRCP 12(b)(6)—Failure to State a Claim

A court may also grant a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. To survive a motion to dismiss for failure to state a claim, the plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "Courts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

### C.    FRCP 12(c)—Judgment on the Pleadings

"After the pleadings are closed but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." <u>Syverson v. FirePond, Inc.</u>, 383 F.3d 745, 749 (8th Cir. 2004) (citation omitted). For purposes of assessing a motion for judgment on the pleadings, the Court views "all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party." <u>Poehl v. Countrywide Home Loans, Inc.</u>, 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted).

## II.    Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment when the record shows that there is no genuine dispute as to a material fact and the party is entitled to judgment on the merits as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Although the Court must view the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law if the nonmoving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex, 477 U.S. at 323. In an APA case such as this, judicial review of an agency decision is limited. Voyageurs Nat. Park Ass'n v. Norton, 381 F.3d 759, 763 (8th Cir. 2004). Courts "are only permitted to set aside agency action that is 'arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law.'" Id. (citing 5 U.S.C. § 706(2)(A)). "This standard of review gives agency decisions 'a high degree of deference.'" Sierra Club v. E.P.A., 252 F.3d 943, 947 (8th Cir. 2011) (quoting Missouri Limestone Producers Ass'n, Inc. v. Browner, 165 F.3d 619, 621 (8th Cir. 1999)). Facial challenges, moreover, are "disfavored." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008). Facial challenges to a statute or regulations can only succeed if the proponent establishes that "no set of circumstances exists under which the [statute or regulations] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

## ARGUMENT

**I.     The Court Lacks Jurisdiction to Hear the First, Second, Fourth and Fifth Claims for Relief.**

The Court lacks subject matter jurisdiction to hear the First (Plaintiffs' Constitutional Challenge to the FSA), Second (Plaintiffs' CRA challenge to the agency's regulations governing review of final certified wetland determinations), and Fourth and Fifth (Plaintiffs' challenge to the agency's response to their 2017 and 2020 request) Claims for Relief. The First Claim for Relief is time-barred under 28 U.S.C. § 2401(a). The Second Claim for Relief is outside of the CRA's waiver of sovereign immunity. And to the extent Plaintiffs seek judicial review of the agency's response to their requests for review of the 2011 final certified wetland determination, there is no "final agency action" that would permit judicial review under the APA. The Fourth and Fifth Claims for Relief should, thus, also be dismissed for lack of subject matter jurisdiction.

**A.     Plaintiffs' constitutional challenge to the FSA is time-barred.**

Plaintiffs' constitutional challenge to Swampbuster in the First Claim for Relief is well outside the six-year statute of limitations set forth in 28 U.S.C. § 2401(a), which forms the waiver of sovereign immunity that determines the Court's jurisdiction to hear Plaintiffs' challenge to the Swampbuster provision. Section 2401(a) is a general jurisdictional provision and dictates that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2401(a). A claim accrues for purposes of Section 2401(a) "'when the plaintiff either knew, or in exercise of reasonable diligence should have known that [they] had a claim.'" Andersen v. U.S. Dep't of Hous. & Urb. Dev., 678 F.3d 626, 629 (8th Cir. 2012) (quoting Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009)); Loudner v. United States, 108 F.3d 896, 900 (8th Cir. 1997).

13

Plaintiffs knew, or in the exercise of reasonable diligence should have known, that they could have brought a facial constitutional challenge to the statute well before the six-year statute of limitations closed. Swampbuster was enacted over thirty years ago, in 1985. Plaintiffs requested in writing that the NRCS complete a wetland certification for their land in 2002, and received a final certified wetland determination in 2011. Docket 1 at ¶ 73. Plaintiffs even filed suit challenging that determination in 2013. Foster, 2014 WL 5512905, at *1. Because Plaintiffs' claim accrued on any of these dates, their challenge was long ago time-barred under section 2401(a) and must be dismissed. A statute of limitations is one of the terms of Congress's consent. "[A] time-barred claim against the Government is [thus] an uncontested claim, over which a district court has no jurisdiction." Miller v. Tony & Susan Alamo Found., 134 F.3d 910, 915-16 (8th Cir. 1998).

That Plaintiffs bring constitutional claims under the APA's standard of review does not alter the statute of limitations or the government's waiver in section 2041(a). The APA does not contain a statute of limitations. APA claims such as the constitutional challenge presented in the First Claim are thus subject to the general statute of limitations in section 2401(a). See Izaak Walton, 558 F.3d at 758-59 (recognizing that the general statute of limitation in section 2401(a) applies to case brought under APA). In short, "[a] constitutional claim can become time-barred as any other claim." Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 292 (1983).

**B.** **The CRA does not waive sovereign immunity.**

The Court should similarly dismiss Plaintiffs' CRA challenge to the regulations in the Second Claim for Relief. In setting out the waiver of sovereign immunity under the CRA, Congress made clear that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review." 5 U.S.C. § 805 (emphasis added). Because there is no waiver of sovereign

immunity for an alleged failure to present a regulation for congressional review under the CRA, Plaintiffs' Second Claim for Relief, too, must be dismissed for lack of subject matter jurisdiction.

"Limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Libr. of Cong. v. Shaw, 478 U.S. 310, 318 (1986). Given the plain language of the CRA, it is not surprising that all of the Circuit Courts to have considered Section 805 have concluded that it bars judicial review of allegations that an agency failed to submit a rule to Congress. See Kansas Nat. Res. Coal. v. U.S. Dep't of Interior, 971 F.3d 1222, 1235 (10th Cir. 2020); Ctr. for Biological Diversity v. Bernhardt, 946 F.3d 553, 563-64 (9th Cir. 2019) ("Congress's intent to preclude judicial review is 'fairly discernable.' Pursuant to the Jurisdiction-Stripping Provision, [courts] are deprived of jurisdiction to review any claim challenging a 'determination, finding, action, or omission' under the CRA." (quoting 5 U.S.C. § 805)). Indeed, Justice Kavanaugh recognized, when sitting on the D.C. Circuit, that the language of section 805 "is unequivocal and precludes review" of the very claim Plaintiffs bring here. Montanans For Multiple Use v. Barbouletos, 568 F.3d 225, 229 (D.C. Cir. 2009).

The Court should follow that consistent Circuit Court precedent—and the plain text of section 805 of the CRA—and similarly reject Plaintiffs' CRA challenge in the Second Claim for Relief.

> **C.** **There is no "final agency action" that would permit review of Plaintiffs' challenge to the agency's response to their requests for review of the agency's final certified wetland determination.**

Finally, to the extent Plaintiffs seek judicial review of the agency's response to their requests for review of the NRCS's certified wetland determination, there is no "final agency action" under the APA that could be reviewable. 5 U.S.C. § 704. "The APA provides for judicial review of a "final agency action for which there is no other adequate remedy in a court." Hawkes

Co., Inc. v. U.S. Army Corps of Eng'rs., 782 F.3d 994, 999 (8th Cir. 2015).  "Two conditions must be satisfied for an agency action to be final. 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" Sierra Club v. U.S. Army Corps. Of Eng'rs., 446 F.3d 808, 813 (8th Cir. 2006) (quoting Bennett v. Spear, 520 U.S. 154, 177-78, (1997)). Neither is present here.

The agency has not taken a final agency action denying Plaintiffs' request for review. The NRCS instead advised Plaintiffs that it was unable to process their request for review because Plaintiffs have not provided the information required to obtain review under the regulations. See Hobbick Decl., Ex. A at 000038 (advising Plaintiffs that NRCS is "unable to determine that any of the conditions mentioned [in the regulations] for a redetermination apply" and that Plaintiffs have the burden of providing that information). The agency has thus taken no action that would consummate the agency's decisionmaking process, nor made any determination regarding Plaintiffs' requests.

Before the agency can make a final determination regarding Plaintiffs' requests for review, Plaintiffs must comply with the regulations. They cannot simply ignore the agency's regulations, and the accompanying lack of reviewable "final agency action," and proceed directly to Court under the APA. Cf. Sisseton-Wahpeton Oyate of Lake Traverse Reserv. v. U.S. Army Corps of Eng'rs., 888 F.3d 906, 915 (8th Cir. 2018) (recognizing that agency action that is merely interlocutory fails to satisfy the consummation requirement of "final agency action" under Bennett v. Spear, 529 U.S. 154, 177-78 (1997)).

Plaintiffs argue that they are excused from exhausting their administrative remedies under the agency's regulatory process in seeking review of the 2011 wetland determination, contending

16

that (1) claims alleging that an agency is unlawfully withholding action are not subject to exhaustion requirements (citing <u>Minier v. Cent. Intel. Agency</u>, 88 F.3d 796, 799 n.2 (9th Cir. 1996)); (2) NRCS has made judicially reviewable final action in denying Plaintiffs' request to review their 2011 wetland certification; and (3) NRCS's letters responding to Plaintiffs' 2017 and 2020 requests for review do not provide any appeal rights. <u>See</u> Docket 16 at pp. 6-7. All of these arguments are misplaced.

First, an action to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), must be based upon a mandatory, non-discretionary obligation that is "legally required." <u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55, 63 (2004). In permitting this remedy, the APA simply "carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus under the All Writs Act[.]" <u>Id</u>. Given its mandamus underpinnings, jurisdiction may only be exercised under section 706(1) claim in "extraordinary circumstances." <u>Org. for Competitive Markets v. U.S. Dep't of Agric.</u>, 912 F.3d 455, 463 (8th Cir. 2018). The Supreme Court has made clear that such circumstances are limited, and include circumstances not present here, such as where an agency fails to promulgate regulations or to otherwise comply with a statutory deadline. <u>Norton</u>, 542 U.S. at 64. Indeed, even if Plaintiffs' characterization of the NRCS response as a "denial" were correct (which it is not), that is not an omission to act subject to 706(1); it instead would be the agency's affirmative act of "saying no to the request." <u>Id</u>.

Second, as explained, NRCS has not made a final decision on Plaintiffs' request for review. The NRCS instead requested that Plaintiffs explain how their request for review falls within the conditions permitted by the agency's regulations. To date, Plaintiffs have failed to provide that explanation. But even if the NRCS response to Plaintiffs' requests for review were treated as

denials, as Plaintiffs claim, NRCS's decision is not a reviewable "final agency action" under the APA. If NRCS denies a request for review, the requester must then appeal that determination to NAD and to the NAD Director. "[I]t is the NAD Director's decision—not the NRCS's initial determination or the hearing officer's decision—that is the reviewable "final agency action" under the APA. Bartlett v. U.S. Dep't of Agric., 716 F.3d 464, 474 (8th Cir. 2013); see also 7 U.S.C. § 6912(e); 7 U.S.C. § 6999; 7 C.F.R. § 11.13(b) (imposing mandatory statutory and regulatory exhaustion requirement under agency's internal appeal procedures prior to instituting lawsuit in district court).

Finally, the NRCS response letters did not include appeal rights because no final agency action has occurred that would even trigger appeal rights. But, even if that, too, were ignored, Plaintiffs are fully aware of the agency's appeal process and understood their obligation to proceed through that process before bringing suit. As explained, Plaintiffs already proceeded under that process in their previous APA lawsuit. See Foster, 2014 WL 5512905, at *1; Bartlett, 716 F.3d at 477 (ruling that parties who had such knowledge of the administrative appeal process cannot claim ignorance of such procedures in an effort to escape exhaustion obligations). Plaintiffs know full well the agency's administrative process and their obligation to exhaust their administrative remedies before bringing suit. The Court should thus reject Plaintiffs' various excuses for ignoring the agency's regulations, as well as their claimed bases for jurisdiction, and dismiss the Fourth and Fifth Claims for Relief for lack of subject matter jurisdiction to the extent those claims seek judicial review of the agency's responses to Plaintiffs' 2017 and 2020 requests.[4]

---

[4]   As noted, Federal Defendants have provided the documentary materials that underlie the agency's consideration of Plaintiffs' request for review. Because of Plaintiffs' failure to comply with the agency's regulations, however, there is not yet a formal, certified administrative record regarding Plaintiffs' requests for review that can be presented to the Court. It is only after Plaintiffs seek review under the agency's regulations—and appealing NRCS's final determination to the

II.    **Plaintiffs' Constitutional Challenge to Swampbuster also Fails under Established Supreme Court Precedent and the Language of the Statute.**

Even if Plaintiffs' Commerce Clause and Tenth Amendment challenges to the statute were not time-barred under the six-year statute of limitations in section 2401(a), they also fail as a matter of law. Congress enacted Swampbuster under its Spending Power without reference to its Commerce Clause authority. Plaintiffs' Tenth Amendment challenge is also without any factual or legal basis. The plain language of Swampbuster makes clear that it does not regulate land and local water use on non-federal, private land, as Plaintiffs allege; instead, Swampbuster provides a voluntary program under which producers who wish to remain eligible for receipt of certain USDA financial benefits agree not to drain wetlands on their property. Plaintiffs' argument to the contrary is without basis in the plain language of the statute or the legislative history.

A.    **Congress validly exercised its Spending Clause authority in conditioning federal benefits upon the protection of wetlands.**

The Constitution empowers Congress to raise and spend revenue to "provide for the common Defense and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. The Supreme Court long ago recognized that Congress may enact laws under its Spending Power and attach conditions on the receipt of federal funds. Contrary to Plaintiffs' Commerce Clause argument, Congress may do so without also relying upon its Article I Commerce Clause authority. South Dakota v. Dole, 483 U.S. 203, 207 (1987). In Dole, the Supreme Court considered a challenge to the constitutionality of a statute conditioning states' receipt of a portion of federal highway funds on the adoption of a minimum drinking age of 21 years old. The State challenged

---

NAD—that the agency's administrative review process would have generated a factual record that could then be reviewed by this Court under section 706(2)(A) of the APA. By failing to comply with the agency's regulations in seeking review, Plaintiffs not only fail to invoke the Court's jurisdiction, they negate the agency's ability to "'complete[] a record which is adequate for judicial review.'" Bartlett, 716 F.3d at 474 (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)).

the funding condition on the ground that it violated the Twenty-First Amendment. Id. at 205-06. The Court rejected that challenge, ruling that Congress may enact laws incident to its Spending Power, conditioning the receipt of federal monies upon compliance by the recipient with federal statutory and administrative directives. Id. at 207. The Court also made clear that Congress may undertake such indirect regulation without relying upon its Commerce Clause powers. Id. The Court recognized that congressional "objectives," such as preserving the Nation's wetlands, "may [instead] be attained through the use of spending power and the conditional grant of federal funds." Id.

Because Plaintiffs' argument that Congress's power to enact Swampbuster is "limited by its enumerated [Commerce Clause] powers under Article I, Section 8 of the United States Constitution," Docket 1 at ¶ 98, it falls flat under the clear holding of Dole. Indeed, relying on Dole, the Seventh Circuit rejected an identical Commerce Clause challenge to Swampbuster. United States v. Dierckman, 201 F.3d 915, 922-23 (7th Cir. 2000). In Dierckman, plaintiff alleged, as here, that Swampbuster was unconstitutional because "the wetland on his farm is isolated and has no connection to interstate commerce." Compare id. at 922, with Docket 1 at ¶¶ 8, 101-08 (likewise asserting that Swampbuster does not regulate interstate waters). The Seventh Circuit rejected that argument, recognizing that it "overlooks the difference [recognized in Dole] between direct congressional regulation under the Commerce Clause, which requires a connection to interstate commerce, and indirect regulation under the spending power, which does not." Id. "Even though Congress may lack the authority to regulate directly a strictly intrastate wetland, [the Seventh Circuit recognized that] the incentive provided by the [FSA] is a valid exercise of the spending power." Id.

Plaintiffs cite <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62 (1990), and <u>New York v. United States</u>, 505 U.S. 144, 167 (1992), in apparent response to the authority in <u>Dole</u> and <u>Dierckman</u>. Docket 1 at ¶ 99. But neither decision is helpful to Plaintiffs. It is puzzling why Plaintiffs would even cite to <u>Rutan</u>, as the Court there struck down on First Amendment grounds an Illinois State patronage policy that permitted the discharge and promotion of State employee on the basis of their political beliefs. 497 U.S. at 73. No First Amendment issues are arguably implicated by Swampbuster.

And the Court in <u>New York</u> reaffirmed its earlier ruling in <u>Dole</u> in recognizing that "'Congress may attach conditions on the receipt of federal funds,'" as it has done in Swampbuster. 505 U.S. at 167 (quoting <u>Dole</u>, 483 U.S. at 206). Indeed, the Court recognized that Supreme Court decisions upholding funding conditions "abound." <u>Id.</u> (citing <u>Fullilove v. Klutznick</u>, 448 U.S. 448, 478-80 (1980); <u>Massachusetts v. United States</u>, 435 U.S. 444, 461-62 (1978); <u>Lau v. Nichols</u>, 414 U.S. 563, 568-69 (1974); <u>Oklahoma v. U.S. Civ. Serv. Comm'n</u>, 330 U.S. 127, 142-44 (1947)). Based upon this precedent, the Court upheld a provision in the Low-Level Radioactive Waste Policy Amendments Act that conditioned the receipt of federal funds on the achievement of a series of disposal milestones for radioactive waste. 505 U.S. at 167.

In short, Congress validly exercised its Spending Clause authority in conditioning federal benefits upon the protection of wetlands. The Court should therefore dismiss Plaintiffs' Commerce Clause challenge for failure to state a claim upon which relief may be granted.

**B.       Swampbuster does not implicate the Tenth Amendment.**

Unlike the drinking age condition that was addressed in <u>Dole</u>—and the above decisions, cited in <u>New York</u>, that preceded <u>Dole</u>—Swampbuster does not implicate State governance or the Tenth Amendment. Perhaps in recognition of <u>Dole</u> and <u>Dierckman</u>, Plaintiffs contend, in passing,

that Swampbuster somehow usurps the States' power to enact "land use and local resource laws." Docket 1 at ¶ 99. But there is nothing in the text of the statute that would support Plaintiffs' argument. And even if there were any ambiguity on this point, the legislative history makes clear that Swampbuster does not authorize the agency to regulate the use of private, non-federal land. H.R. Rep. 99-271(1), reprinted in 1985 U.S.C.C.A.N. 1103, 1188. Plaintiffs' attempt to invoke the Tenth Amendment is, thus, without any factual or legal basis whatsoever.

C.      **Swampbuster does not implicate any of the *Dole* limitations.**

Finally, while Dole recognized that certain limitations may be applicable to funding conditions where the States' interests are implicated, none apply to Swampbuster. The first of the Dole limitations recognizes that Congress should condition the receipt of federal monies in pursuit of the "general welfare." Dole, 483 U.S. at 207. Plaintiffs do not even attempt to argue that Congress did not act to serve the general welfare by addressing the disappearance of wetlands resulting from conversion into croplands. Nor could they, as Congress's findings regarding the importance of wetlands are clear and "courts should defer substantially to the judgment of Congress." Id. This is particularly so given that Plaintiffs make a facial challenge to the statute. In evaluating Swampbuster's facial constitutionality, "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 607 (2000).

Second, the Dole Court recognized that Congress should enact funding conditions like Swampbuster "unambiguously," so that private actors may exercise their choices knowingly. Id. Again, Plaintiffs do not even attempt to object to Swampbuster on this ground; nor could they, as "the prescriptions of Swampbuster [are] very detailed and not the least ambiguous." Downer v.

U.S. By & Through U.S. Dep't of Agric. & Soil Conservation Serv., 97 F.3d 999, 1006 n.4 (8th Cir. 1996).

Third, certain funding conditions "might be illegitimate if they are unrelated 'to the federal interest in particular national projects or programs.'" Id. (quoting Massachusetts v. United States, 435 U.S. 444, 461 (1978)). The relatedness test does not require that Congress tie a funding condition to any particular program; Congress can instead condition federal funding to achieve broader goals where the condition is "'reasonably calculated to address the federal interest.'" Van Wyhe v. Reisch, 581 F.3d 639, 652 (8th Cir. 2009) (quoting Cutter v. Wilkinson, 423 F.3d 579, 651 (6th Cir. 2005)). In Van Wye, for example, the Eighth Circuit upheld the constitutionality of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which conditioned a state's acceptance of federal prison funding on the state's waiver of Eleventh Amendment immunity from suits by prisoners alleging acts that substantially burden an inmate's exercise of religion. The Eighth Circuit made clear in Van Wye that "'*both* the protection of the religious exercise of prisoners and their rehabilitation are rational goals of Congress, and those goals are related to the use of federal funds for state prisons.'" Id. at 651 (quoting Benning v. Georgia, 391 F.3d 1299, 1308 (11th Cir. 2004)) (emphasis added).

Contrary to Plaintiffs' argument, therefore, Swampbuster need not "relate to or improve the effectiveness of any" particular USDA "farm assistance program." Docket 1 at ¶ 109. To ensure the health of agricultural working lands, and to maximize the ability of American farmers and ranchers to deliver a reliable food supply, the Secretary of Agriculture oversees a variety of programs, from those that provide spending for farm programs and provide financial support to farmers and ranchers, to those that promote natural resource conservation and sound land management practices, through direct spending or though incentives like Swampbuster. For

example, USDA promotes agricultural production through programs like the Federal Crop Insurance program, which provides farmers with various risk management tools, and therefore encourages the use of land for farming. See 7 U.S.C. §§1501-1524, 1531. At the same time, USDA also promotes land conservation through programs like the Conservation Reserve Program (to cite just one example), which provides farmers who voluntarily agree to remove certain sensitive land from agricultural production with yearly rental payments. See 16 U.S.C. §§ 3831-35. Because Swampbuster is "reasonably calculated to address the federal interest," Van Wyhe, 581 F.3d at 652, in ensuring a safe and adequate food supply—and in promoting sound land management practices and conservation—it easily satisfies the Dole relatedness consideration, just as RLUIPA satisfied the federal interest in ensuring the free exercise of religion in our Nation's prisons.

The final Dole limitation recognizes that "other constitutional provisions may provide an independent bar to the conditional grant of federal funds." Dole, 483 U.S. at 208. It is here that Plaintiffs attempt to invoke the Commerce Power. See, e.g., Docket 1 at ¶¶ 98, 110-11 (arguing that Congress is limited to its Commerce Power in enacting Swampbuster); ¶ 100 ("Swampbuster exceeds the Commerce Power and is unconstitutional"). The "indirect bar" prohibition in Dole, however, does not require that Congress enact funding restrictions under its other Article I enumerated powers. It instead "stands for the unexceptionable proposition" that Congress may not use its Spending Power "to induce the States to engage in activities that would themselves be unconstitutional." Dole, 483 U.S. at 210. For example, "a grant of federal funds conditioned on invidiously discriminatory state action or the infliction of cruel and unusual punishment would be

an illegitimate exercise of the Congress's broad spending power." Id. Properly understood, this limitation thus also has no arguable application to Swampbuster or to its constitutionality.[5]

### III.    Federal Defendants Are Entitled to Dismissal of Plaintiffs' Challenge to the Swampbuster Regulations.

Plaintiffs' challenge to the agency's regulations governing review of final certified wetland determinations also fails. Permitting Plaintiffs to continually challenge the agency's final certification based upon the same arguments they made before the agency, Department, and reviewing courts, as they appear to be attempting to do here, is not required by the statute or procedural due process. Were Plaintiffs able to continually seek review of issues that have already been adjudicated and obtain a stay of the certification pending review, they could stymie the enforceability of Swampbuster in perpetuity, contrary to the will of Congress in enacting the provision. Because the regulations prevent such gamesmanship, Plaintiffs' statutory and due process challenge to the regulations in the Third, Fourth and Fifth Claims for Relief should be rejected.

#### A.    The agency's regulations permit appropriate review of final wetland certifications under the statute.

Plaintiffs assert that the statute imposes a "duty" upon NRCS to accept all requests for review and prohibits a certified determination from taking effect while the request for review is pending. Docket 1 at ¶ 117. But the statutory provision that Plaintiffs rely upon for that argument

---

[5] Federal Defendants also note that an administrative record is not presented regarding Plaintiffs' facial statutory and constitutional challenges because no such record is appropriate under the law. "A facial challenge to a statute or regulation is independent of the individual bringing the complaint and the circumstances surrounding his or her challenge." Preminger v. Sec'y of Veterans Affs., 517 F.3d 1299, 1311 (Fed. Cir. 2008) (citing Griffin v. Sec'y of Veterans Affs., 288 F.3d 1309, 1317 (Fed. Cir. 2002)). An administrative record is thus neither necessary, nor appropriate, to resolve Plaintiffs' facial challenges. Am. Bankers Ass'n v. Nat'l Credit Union Admin., 271 F.3d 262, 266 (D.C. Cir. 2001). Plaintiffs' facial challenges can and should instead be adjudicated based upon the statute and legislative history alone. Id.

is silent on how a party may request review of a final wetland certification. The provision only states that "[a] final wetland certification . . . remains valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4). The agency thus filled the gap in the statute by promulgating regulations governing requests for review of wetland determinations.

In accordance with the statute, the agency's regulations permit review when (1) "a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions"; or (2) the agency "concurs with an affected person that an error exists in the current wetland determination." See 7 C.F.R. § 12.30(c)(6). Both of these conditions are reasonable, in accord with the statute, and entitled to Chevron deference.

The first condition aligns review with the statutory and regulatory criteria that underlie a wetland determination; and the second permits review where the agency agrees that there was an error made in the original wetland determination. When, as here, "the statute is silent . . . with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984). Judicial deference to an agency's interpretation of a statute it administers should be given "controlling weight unless [the regulation] is 'arbitrary, capricious, or manifestly contrary to the statute.'" Friends of Boundary Waters Wilderness v. Bosworth, 437 F.3d 815, 822 (8th Cir. 2006) (quoting In re Old Fashioned Enters., 236 F.3d 422, 425 (8th Cir. 2001)).

Limiting review of final wetland certifications to these circumstances is entirely reasonable. Adopting Plaintiffs' interpretation would permit a party to submit serial reviews of

final certified wetland determinations based upon the same arguments (or without any argument at all) time-and-again, and by doing so forever prevent the certification from taking effect. Plaintiffs' interpretation, in sum, would essentially undo the district court's decision in <u>Foster v. Vilsack</u>, No. CIV. 13-4060-KES, 2014 WL 5512905 (D.S.D. Oct. 31, 2014), and the Eighth Circuit's affirmation of that decision, 820 F.3d 330 (8th Cir. 2016). More broadly, it would frustrate Congress's intent in enacting Swampbuster by thwarting the enforcement of the provision altogether. The agency has thus rejected Plaintiffs' interpretation. <u>See</u> NAD Director Decision, Case No. 2014E000753, at 8 (June 6, 2016) (recognizing that a party could continually submit the same information again and again, which "would be expensive for NRCS, allow endless litigation of the same issues, and undermine the wetland determination process."). The Court should also reject the interpretation and dismiss Claims Three, Four, and Five of the Complaint. <u>See</u> <u>Gunn</u>, 118 F.3d at 1236-39 (rejecting statutory challenge to Swampbuster regulations and to a request for declaratory relief where plaintiff's interpretation of the statute was inconsistent with the general purpose of the statute).

**B.      The agency's regulations also comport with procedural due process.**

For the same reasons, the Court should also reject Plaintiffs' procedural due process challenge to the agency's regulations. Procedural due process does not require that a party be permitted to frustrate Congress's will by manipulating the agency's administrative process.

Rather, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)). This generally involves consideration of the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335.

The regulations comply with the first and second <u>Mathews</u> factors by permitting review where either a natural event alters one of the statutory criteria underlying a wetland determination or when the agency concurs with an affected party that an error exists in the current wetland determination. At the same time, the regulations appropriately accommodate the agency's interest under the third <u>Mathews</u> factor by avoiding the administrative burdens that would result from permitting a party to seek serial review of wetland determinations based upon previously considered arguments—or even no argument at all. Indeed, this very case demonstrates the necessity of establishing the conditions for a valid request for review of certified wetland determinations; without such conditions, the agency would be tethered to a system where agency wetland determinations could never be deemed final and enforceable. Procedural due process does not demand that the agency be saddled with such an unworkable administrative process.

## <u>CONCLUSION</u>

The Court lacks subject matter jurisdiction over Plaintiffs' First, Second, Fourth and Fifth Claims for Relief. Further, with regard to Plaintiffs' First, Third, Fourth, and Fifth Claims for Relief, Federal Defendants are entitled to dismissal as a matter of law. Accordingly, the Court should dismiss this action.

Dated this 15th day of November, 2021.

> DENNIS R. HOLMES
>
> Acting United States Attorney
>
> */s/ Alison J. Ramsdell*
> Alison J. Ramsdell
> Assistant U.S. Attorney
> P.O. Box 2638
> Sioux Falls, SD 57101-2638
> (605) 330-4400
> Alison.Ramsdell@usdoj.gov
>
> TODD KIM
> Assistant Attorney General
>
> PAUL G. FREEBORNE
> Trial Attorney
> U.S. Department of Justice
> Environment and Natural Resources Division
> P.O. Box 7611
> Washington, D.C. 20044-7611
> Tel: (202) 532-5271
> Fax: (202) 305-0506
> paul.freeborne@usdoj.gov
>
> *Attorneys for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of D.S.D. Civ. LR 7.1(B)(1) because it contains 9,040 words.

Dated this 15th day of November, 2021.

> */s/ Alison J. Ramsdell*
> ALISON J. RAMSDELL
> Assistant U.S. Attorney