UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ARLEN FOSTER and CINDY FOSTER, | |
| Plaintiffs, | |
| v. | Case No. 4:21-cv-04081-RAL |
| THE UNITED STATES DEPARTMENT OF AGRICULTURE; TOM VILSACK, in his official capacity as Secretary of the United States Department of Agriculture; THE NATURAL RESOURCES CONSERVATION SERVICE; TERRY COSBY, in his official capacity as Acting Chief of the Natural Resources Conservation Service; and LAURA BROYLES, in her official capacity as Acting South Dakota State Conservationist, | |
| Defendants. | |

**PLAINTIFFS' COMBINED MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AND RESPONSE TO MOTION TO DISMISS**

## INTRODUCTION

This case concerns a small pool of water, approximately 8.5 inches deep, that sometimes shows up in the middle of Plaintiffs Arlen and Cindy Foster's ("the Fosters") farm field. Statement of Facts ("Facts") ¶ 7. In 2011, Defendants Natural Resources Conservation Service (NRCS) and United States Department of Agriculture (USDA) determined that this water was a naturally occurring wetland under 16 U.S.C. § 3822 ("Swampbuster"). Facts ¶ 19. As a result of this 2011 Certification, in the years the water appears, the Fosters are unable to drain it to adequately farm that area of their land. Facts ¶ 13. If they drain the water, they risk loss of eligibility for numerous programs administered by Defendant USDA, without which they will have difficulty making a living. Facts ¶¶ 13, 14.

Under Swampbuster's terms, the 2011 Certification "remain[s] valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4). In other words, under "the plain language of the statute … any person subsequently affected by an existing wetland determination may invalidate the existing certification by requesting review of the certification by the Secretary." *Branstad v. Veneman*, 212 F. Supp. 2d 976, 997 (N.D. Iowa 2002) (*Branstad III*) (emphasis omitted).

Since 2011, the Fosters have hired experts who have gathered new information about the hydrology of the purported wetland. Facts ¶¶ 27–29. This new evidence shows that the hydrology of the pool is impacted by a tree belt that Arlen's father planted in the 1930s. Facts ¶¶ 8–9. Thus, the pool is arguably an artificial wetland

1

not subject to Swampbuster's requirements. *See* 16 U.S.C. § 3822(b)(1)(F). Based on the new information about the hydrology of the pool, the Fosters twice requested Defendants review the 2011 Certification, first in 2017 and then in 2020. Facts ¶¶ 22, 26. Despite the plain language of the statute, 16 U.S.C. § 3822(a)(4), the agency declined to review and invalidate the 2011 Certification. Facts ¶ 30.

Swampbuster requires Defendants to accept the Fosters' requests for review of the 2011 Certification. *See B & D Land & Livestock Co. v. Veneman*, 332 F. Supp. 2d 1200, 1213 (N.D. Iowa 2004). Their refusal to do so is either (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or (2) unlawful withholding of agency action. *See* 5 U.S.C. § 706.

There is no jurisdictional bar to this Court enforcing Swampbuster's language and holding that Defendants must review the 2011 Certification. Indeed, Defendants do not even challenge this Court's jurisdiction to hear the Third Claim for Relief, which asks this Court to hold that Defendants' regulations are inconsistent with Swampbuster. *See* Memorandum in Support of Federal Defendants' Motion to Dismiss or Alternatively for Summary Judgment (Doc. 22) ("Defendants' Brief") at 13, 25; Complaint (Doc. 1) ¶¶ 122–32. But this Court's jurisdiction is not limited to only one of the Fosters' claims. As demonstrated below, this Court has jurisdiction under the APA to hear every claim.[1] This Court should deny Defendants' motion to dismiss and grant the Fosters' motion for summary judgment.

---

[1] The Fosters address Defendants' finality and exhaustion arguments about the Fourth and Fifth Claims for Relief in Section I, *infra*; they address Defendants' CRA sovereign immunity arguments about the Second Claim for Relief in Section IV, *infra*;

## FACTUAL BACKGROUND

The Fosters' farm has been in the family since the early 1900s. Facts ¶ 1. Around 1936, Arlen's father developed a tree belt along the south edge of the farm field. Facts ¶ 2. At the time the tree belt was developed, the then-recently established Soil Conservation Service, which is now NRCS, encouraged planting tree belts as a conservation measure. Facts ¶ 3. NRCS still encourages the development of tree belts to prevent erosion, Facts ¶ 4, and the Fosters intend to preserve their tree belt for that purpose.

Snow accumulates under the tree belt during South Dakota's stormy winters and in spring the snow melts and drains across the adjacent field. Facts ¶ 5. Over the decades since the tree belt was developed, melted snow from the tree belt pools for periods of time in the field. Facts ¶ 6. Because the pool receives additional snow melt from the tree belt, it does not dry out at the same pace as the surrounding field. Facts ¶ 9. In roughly half the years, the pool dries out soon enough so that its soil is dry enough to support the use of farm equipment at the same time as the rest of the field. Facts ¶ 10. In other years, however, the water does not dry out before planting season. Facts ¶ 11.

In these "wetter years," the Fosters are unable to produce an agricultural crop either in the pool or the surrounding portions of the field unless they were to drain the water to speed up its "drying out." Facts ¶ 12. But because Defendants have previously determined that this pool was a naturally occurring wetland under

---

and they address Defendants' statute of limitations arguments about the First Claim for Relief in section V, *infra.*

Swampbuster, the Fosters cannot drain it without losing access to various farm assistance programs. Facts ¶ 13. Without eligibility for and participation in these programs, the Fosters would have difficulty making a living farming their land. Facts ¶ 14.

NRCS first completed a wetland certification for the Fosters' farm in 2004 and determined that the pool of water and other areas of the field in question were wetlands whose use was restricted by Swampbuster. Facts ¶ 15. In 2008, the Fosters requested in writing that NRCS review the 2004 delineation. Facts ¶ 16. Shortly thereafter, NRCS granted the Fosters' request and agreed to review the previous delineation. Facts ¶ 17.

NRCS certified a new wetland delineation in 2011 and determined that 0.8 acres of the pool is a wetland whose farming use is restricted by Swampbuster. Facts ¶ 19. The Fosters took an administrative appeal from the 2011 Certification, in which USDA upheld the certification, and then sought judicial review of the 2011 Certification in this Court. Facts ¶ 20. This Court and the Eighth Circuit upheld the 2011 Certification on deference grounds. Facts ¶ 21; *see generally Foster v. Vilsack*, 820 F.3d 330 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 620 (2017).

On June 6, 2017, the Fosters submitted a request under 16 U.S.C. § 3822(a)(4) that NRCS review the 2011 Certification ("the 2017 Request"). Facts ¶ 22. In response to the 2017 Request, NRCS stated—despite the language in the statute—that the agency would only review the 2011 Certification if the Fosters "supply additional information that has not previously been considered by the NRCS." Facts ¶ 24;

Administrative Record ("AR") (attached to Declaration of Deke Hobbick, Doc. Nos. 24–32) at 000009. Furthermore, the agency expressly denied the Fosters any administrative appeal rights of the agency's decision not to review the 2011 Certification. Facts ¶ 25.

In 2020, the Fosters submitted a new request under 16 U.S.C. § 3822(a)(4) that NRCS review the 2011 Certification ("the 2020 Request"). Facts ¶ 26. Based on NRCS's response to the 2017 Request, the 2020 Request included technical reports from Banner Associates and Wenck Associates about how the tree belt affects the hydrology of the pool and concluding that the tree belt is the primary cause of the pool. Facts ¶ 27. These reports were new and had never been presented to or considered by NRCS. Facts ¶ 28; Declaration of Deke Hobbick (Doc. 24) ¶ 4. Despite the language of the statute, and the agency's statement in the 2017 letter requesting new information not previously considered by NRCS, the agency again declined to review the 2011 Certification. Facts ¶ 30. As with the 2017 response, the 2020 response did not include any administrative appeal rights. Facts ¶ 32.

## LEGAL BACKGROUND

### *The Swampbuster Act*

In 1985, Congress established the Erodible Land and Wetland Conservation and Reserve Program, 16 U.S.C. § 3801, *et seq.*, provisions of which ("Swampbuster") restrict the use of "wetlands" in farm fields owned by recipients of USDA agricultural benefits, 16 U.S.C. §§ 3821–3822; *see generally*, *Clark v. U.S. Dep't of Agric.*, 537 F.3d 934, 935–36 (8th Cir. 2008). Swampbuster defines wetlands as land that combines

wetland hydrology, hydric soils, and the ordinary production of plants that grow well in wet conditions. 16 U.S.C. § 3801(a)(27), *id*. § 3801(a)(12), (13).

If a person drains a wetland and produces an agricultural commodity on it, Swampbuster disqualifies that person from eligibility for a wide variety of federally authorized agricultural benefit programs, *id*. § 3821(a)—including Agriculture Risk Coverage, Price Loss Coverage, and other payments made by the Commodity Credit Corporation, *id*. § 3821(b)(1)—and premium subsidies for federally authorized crop insurance programs, *id*. § 3821(c). *Id*. § 3821(d)(1). This disqualification does not apply, however, to wetlands that are "temporarily or incidentally created as a result of adjacent development activity." *Id*. § 3822(b)(1)(F); § 3822(b)(2)(B).

Under Swampbuster, the Secretary is required to certify "all wetlands located on subject land on a farm" 16 U.S.C. § 3822(a)(1)–(3). Final certifications "remain valid and in effect ... until such time as the person affected by the certification requests review of the certification by the Secretary" of the USDA. *Id*. § 3822(a)(4). The statutory language places no limits or conditions on the affected person's right to request review of a final certification. *Id*. Furthermore, a final certification "shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by" a person affected by the certification. *Id*. § 3822(a)(6). Thus, Swampbuster allows a person affected by an existing certification to trigger a review of that certification at any time. *See Branstad III*, 212 F. Supp. 2d at 997.

*Swampbuster Regulations*

On September 6, 1996, Defendants USDA and NRCS promulgated a final interim rule with request for comments, interpreting various provisions of

6

Swampbuster. 61 Fed. Reg. 47,019 (Sept. 6, 1996) *codified at* 7 C.F.R. §§ 12.1–12.13, 12.30–12.34. ("Swampbuster Regulations").

Despite the language of the statute, a provision of the Swampbuster Regulations imposes limitations on the right to request review of a prior wetland certification:

> A person may request review of a certification only if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or *if NRCS concurs with an affected person that an error exists in the current wetland determination.*

7 C.F.R. § 12.30(c)(6) (emphasis added) (the Review Regulation).

*The Congressional Review Act*

The Congressional Review Act ("CRA"), 5 U.S.C. § 801, *et seq.*, requires federal agencies to submit every new rule they adopt to Congress before the rule goes into effect. If our elected representatives disagree with an agency's rule, the CRA provides streamlined procedures for Congress and the President to pass a resolution disapproving the rule, which also prevents substantially similar rules from being adopted in the future.

The CRA provides:

> *Before a rule can take effect*, the Federal agency promulgating such rule *shall submit* to each House of the Congress and to the Comptroller General a report containing—(i) a copy of the rule; (ii) a concise general statement relating to the rule, including whether it is a major rule; and (iii) the proposed effective date of the rule.

5 U.S.C. § 801(a)(1)(A) (emphasis added).

Once a rule is submitted—and only then—Congress can review the rule and, if it disapproves of it, pass a joint resolution voiding the rule using streamlined

procedures. According to the statute, the disapproval resolution may only be introduced during "the period beginning on the date on which the report ... is received by Congress and ending 60 days thereafter." 5 U.S.C. § 802(a). Thus, if an agency refuses to comply with the CRA's submission requirement, it denies Congress the opportunity to consider the rule.

If both Houses of Congress pass such a resolution, the joint resolution is sent to the President and, if the President signs it, the CRA provides that the rule "shall not take effect[.]" 5 U.S.C. § 801(b). The agency is also barred from reissuing the rule "in substantially the same form" or issuing a new rule "that is substantially the same" as the disapproved rule, unless Congress has enacted legislation in the interim to "specifically authorize[]" it. *Id*.

The CRA defines "rule" broadly as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4); 5 U.S.C. § 804(3)(C). It has only a few narrow exceptions for rules "of particular applicability," rules "relating to agency management or personnel," and rules "of agency organization, procedure, or practice that do[ ] not substantially affect the rights or obligations of non-agency parties." 5 U.S.C. § 804(3). Every other rule must be submitted.

## STANDARDS OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Green v. Dormire*, 691

F.3d 917, 921 (8th Cir. 2012) (citing Fed. R. Civ. P. 56(a)).

When reviewing a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Middlebrooks v. United States*, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014) (citing *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012))). "The court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint." *Id.* (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted).

In the Eighth Circuit, a party challenging subject-matter jurisdiction under Rule 12(b)(1) must attack either the facial or factual basis for jurisdiction. *Middlebrooks*, 8 F. Supp. 3d at 1173 (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). A facial challenge requires the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction, and the nonmoving party receives the same protections as it would if defending a motion to dismiss under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6. A factual attack challenges the factual basis for subject-matter jurisdiction, and the court considers matters outside the pleadings without giving the nonmoving party the benefit of the Rule 12(b)(6) safeguards. *Id.*; *but see Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) (Elements of standing—also a jurisdictional requirement—must

be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at successive stages of litigation.).

Under the Administrative Procedure Act (APA), courts "shall" "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1); § 706(2)(A). The latter review, while "narrow," still "entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Downer v. U.S. By & Through U.S. Dep't of Agric. & Soil Conservation Serv.*, 97 F.3d 999, 1002 (8th Cir. 1996) (quoting *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)).

The APA also requires courts to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. A court owes an "agency's interpretation of the law no deference unless, after employing traditional tools of statutory construction," the court is "unable to discern Congress's meaning." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (quotations omitted). Courts do not defer to an agency interpretation that is "inconsistent with the plain language of the statute or constitutes an unreasonable interpretation of an ambiguous statute." *Afolayan v. INS*, 219 F.3d 784, 787 (8th Cir. 2000).

## ARGUMENT

**I.    This Court has jurisdiction to determine whether Defendants must accept the Fosters' request for review**

Defendants move to dismiss the Fourth and Fifth Claims for relief for lack of subject-matter jurisdiction. Defendants' Brief at 13. This Court should deny the motion to dismiss these claims because NRCS's denial of the Fosters' requests for review is final agency action within the meaning of the APA. *See Sackett v. E.P.A.*, 566 U.S. 120, 126 (2012). Alternatively, if NRCS's denial is not final agency action, then this Court should "compel agency action unlawfully withheld …." 5 U.S.C. § 706(1).

**A.    Defendants do not challenge this Court's jurisdiction to hear the Third Claim for Relief and, thus, must decide whether the Review Regulation is consistent with Swampbuster**

As an initial matter, Defendants do not challenge this Court's jurisdiction over the Third Claim for Relief. Defendants' Brief at 13, 25. This Claim alleges that the review regulation is inconsistent with Swampbuster and violates procedural due process. Complaint ¶¶ 122–32. Defendants move to dismiss this claim only for failure to state a claim. Defendants' Brief at 13, 25. Thus, they ask this Court to determine whether they are entitled to judgment on this claim as a matter of law. *See Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (stating standards for Rule 12(b)(6) motions). The Fosters move for summary judgment on this claim, also arguing that they are entitled to judgment as a matter of law. Both sides agree that, in deciding the motions, this Court must interpret Swampbuster's meaning and determine whether the Review Regulation is consistent with the language of the

11

statute. Therefore, regardless of whether this Court grants Defendants' motion to dismiss the Fourth and Fifth Claims, this Court must still answer the central issue in this case: whether Swampbuster requires NRCS to accept the Fosters' requests for review of the wetlands delineation.

### B. This Court has jurisdiction to hear the Fourth and Fifth Claims for relief because NRCS's denial is final agency action

In addition to the Third Claim for relief, this Court has jurisdiction under the APA to hear the Fourth and Fifth Claims for relief. The Fosters have twice requested that NRCS complete a new Certified Wetland Determination, and twice NRCS refused. Facts ¶¶ 22–26; 30–32. As a result, the Fosters are unable to drain the pool of water on their farmland without risking the loss of various benefits. Facts ¶ 13. NRCS's decision is not subject to any further agency review. *See* Defendants' Brief at 18. Thus, NRCS's denial of the Fosters' review request is final agency action within the meaning of the APA.

"There is no doubt [this] is agency action, which the APA defines as including even a 'failure to act.'" *Sackett*, 566 U.S. at 126 (citing 5 U.S.C. §§ 551(13), 701(b)(2)). The Fosters requested a review, and NRCS denied that request. NRCS made its decision and has acted within the meaning of the APA. *See id.*

NRCS's decision is also final. NRCS's denial of the Fosters' request is "the consummation of the Agency's decisionmaking process" because the decision is "not subject to further Agency review." *Sackett*, 566 U.S. at 127 (quotations omitted). As Defendants admit in their brief, Defendants' Brief at 18, there is no way for the Fosters to administratively appeal the State Conservationist's conclusion that none

"of the [regulatory] conditions … for a redetermination apply." Facts ¶ 31; AR000038.
Defendants suggest that NRCS might process the Fosters' requests for review if they
can provide different information, Defendants' Brief at 16, but "[t]he mere possibility
that an agency might reconsider in light of 'informal discussion' and invited
contentions of inaccuracy does not suffice to make an otherwise final agency action
nonfinal." *Sackett*, 566 U.S. at 127. As Defendants made clear in its letters and now
in their brief, the Fosters have "no entitlement to further Agency review." *Id.*

NRCS has also "determined" "rights or obligations." *Bennett v. Spear*, 520 U.S.
154, 178 (1997) (quotation omitted). Because of NRCS's action, the 2011 Certification
remains in place. Facts ¶ 33. The Fosters are unable to drain the pool of water on
their farmland without risking the loss of various benefits. In short, "legal
consequences will flow" as result of NRCS's decision not to review the 2011
Certification. *Bennett*, 520 U.S. at 178 (quoting *Port of Boston Marine Terminal Ass'n
v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Thus, the agency's
decision is final. *See Sackett*, 566 U.S. at 126. This Court has jurisdiction under the
APA to hear the Fourth and Fifth Claims for relief, and this Court should deny
Defendants' motion to dismiss those claims.

### C. The Fosters did not need to exhaust their administrative remedies before filing this suit

#### i. The Agency regulations do not allow for an appeal of NRCS's denial

Despite arguing that there are no avenues available to the Fosters to exhaust
their claims, Defendants argue that the Fosters must exhaust their claims before

bringing this case. *See* Defendants' Brief at 16–18. In support of this argument, Defendants cite the Department of Agriculture's statutory and regulatory exhaustion requirements. Defendants' Brief at 18 (citing *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 474 (8th Cir. 2013); 7 U.S.C. § 6912(e); 7 U.S.C. § 6999; 7 C.F.R. § 11.13(b)). But those exhaustion requirements are not applicable here.

Defendants cite 7 U.S.C. § 6912(e), which provides "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against" the agency. But, as Defendants admit in their briefing, Defendants' Brief at 18, the Secretary has not established any appeal procedures to challenge NRCS's refusal to review the existing wetland delineation. NRCS did not provide any appeal rights in its responses to the Fosters' request. In fact, NRCS explicitly stated that the Fosters were prohibited from any further review of their request. Facts ¶ 25; AR000009. Therefore, the Fosters exhausted all the avenues available to them before filing suit.

The unavailability of any appeal procedures is reflected in the agency's regulations. Under 7 C.F.R. § 12.30(c)(6), it is NRCS, and only NRCS, that determines whether to accept a request for review of a certified wetland delineation. Indeed, when the Fosters requested an administrative appeal, NRCS denied that request, citing 7 C.F.R. § 12.30(c)(6). Facts ¶ 25; AR000009. Thus, under the agency's own interpretation of its regulations, the Fosters have exhausted all available administrative avenues.

### ii.    Even if appeals were available, the Fosters' claims are within recognized exemptions to the exhaustion requirement

Even if there were appeal procedures available to the Fosters, "failure to exhaust their administrative remedies is not a jurisdictional bar to review and the court may consider whether exhaustion is excused under a limited number of exceptions." *Bartlett*, 716 F.3d at 472.[2] A court may excuse a party from exhausting administrative remedies "if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, … or if the issues to be decided are primarily legal rather than factual." *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006) (citing *In Home Health, Inc. v. Shalala*, 272 F.3d 554, 560 (8th Cir. 2001), *Missouri v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987)). If the Fosters were required to exhaust administrative remedies, this Court should excuse any failure to exhaust because this case fits within the exceptions.

The Fosters' complaint presents questions that are primarily legal rather than factual. The Complaint asks this Court to interpret the governing statutes and whether Defendants complied with those statutes. *See* Complaint ¶ 89. Resolution of these issues "requires no special agency expertise, but rather, involves interpretation of a regulation which is a matter better suited for the courts." *Bowen*, 813 F.2d at 871 (citing *McKart v. United States*, 395 U.S. 185, 197–98 (1969), for the proposition that "matters of statutory interpretation do not require any special expertise of the

---

[2] Defendants mistakenly suggest that the exhaustion requirement is jurisdictional. *See* Defendants' Brief at 13.

agency"). Thus, any failure to exhaust does not prevent this Court from deciding the Fosters' claims.[3]

Furthermore, any exhaustion would be futile. Courts may excuse exhaustion provisions when the agency predetermined the issue before the plaintiff filed the lawsuit. *See Herr v. U.S. Forest Serv.*, 803 F.3d 809, 822 (6th Cir. 2015) (citing *Ace Prop.*, 440 F.3d at 1000). Here, the regulations provide that NRCS will only accept review if it concurs that an error exists in the current wetland determination. 7 C.F.R. § 12.30(c)(6). In other words, the agency's predetermination is built into the regulations. Any further review would be pointless because NRCS would merely reiterate that it does not concur that an error exists. Thus, the Fosters are excused from exhausting their claims. *See Herr*, 803 F.3d at 822 (quotations omitted). This Court should deny Defendants' motion to dismiss the Fourth and Fifth Claims for relief.

### D. Alternatively, if NRCS's denial is not final agency action, then NRCS is unlawfully withholding agency action

If NRCS's refusal to accept review is not final agency action, the APA authorizes this Court to "compel agency action unlawfully withheld …." 5 U.S.C. § 706(1). As further demonstrated below, Swampbuster imposes an unambiguous statutory requirement that NRCS accept a producer's request to review an existing wetland certification. *See* Section II-A, *infra*; *see also Branstad III*, 212 F. Supp. 2d

---

[3] The Fosters also bring two constitutional claims, Complaint ¶¶ 98–115, 127–132; *Ace Prop.*, 440 F.3d at 1000 (constitutional claims can be excused from the exhaustion requirement). Defendants, however, do not move to dismiss those claims for failure to exhaust.

at 997. In this case, the Fosters are merely requesting that this Court compel NRCS to review the existing certification. That falls within the meaning of § 706(1), which empowers a court "to compel an agency … 'to take action upon a matter, without directing *how* it shall act.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)).

Defendants' reliance on *Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 463 (8th Cir. 2018) is misplaced. As the court explained, the issue there was "whether USDA has 'unreasonably delayed' agency action, not whether action was 'unlawfully withheld.'" *Id.* at 462 n.5. The court did not compel agency action because Congress gave an "ambiguous directive" and the agency had already taken action to carry out that directive *Id.* at 463. Here, the issue is whether NRCS has unlawfully withheld agency action in the face of an unambiguous statutory directive to take a discrete agency action. Accordingly, this Court should deny Defendants' motion to dismiss the Fourth and Fifth Claims for relief.

## II.   NRCS must accept the Fosters' request for a new delineation and vacate the previous delineation

### A. Swampbuster requires NRCS to accept the Fosters' request for a new delineation and vacate the previous delineation

NRCS's refusal to accept the 2017 and 2020 Requests to review the 2011 Certification is inconsistent with Swampbuster. 16 U.S.C. § 3822(a)(4); *Branstad III*, 212 F. Supp. 2d at 997. The statute provides that "[a] final certification … shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the

17

certification by the Secretary." 16 U.S.C. § 3822(a)(4). Thus, under the plain language of the statute, when a person affected by the certification requests review, the previous certification is invalidated. *Branstad III*, 212 F. Supp. 2d at 997.

Other sections of Swampbuster confirm the meaning of Subsection (a)(4). *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotations omitted)). Subsection (a)(6) of Swampbuster provides that an existing "delineation shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by the person under paragraph (4)." 16 U.S.C. § 3822(a)(6). Thus, the statute puts the producers, not the agency, in charge of when a wetland delineation is reviewed. *Id*. In other words, "the Secretary may not invalidate an existing, certified wetland determination unless asked to do so by a person then affected by the determination …" *Branstad III*, 212 F. Supp. 2d at 997. And "pursuant to § 3822(a)(4), a person affected by an existing, certified wetland determination may request that the Secretary review an existing certified determination, which ends the 'validity' of the existing certified determination." *Id*.

The legislative history of Swampbuster further demonstrates that NRCS is required to accept the Fosters' requests for review. In 1996, Congress amended Swampbuster to remove Defendants' discretion to determine when to review certifications, and instead gave producers the right to trigger review. *See* Federal Agriculture Improvement and Reform Act of 1996, § 322, Pub. Law No. 104-127, 110

Stat. 888 (Apr. 4, 1996). Prior to these 1996 amendments, the statute provided that "[t]he Secretary shall provide by regulation a process for the periodic review and update of such wetland delineations as the Secretary deems appropriate." Food, Agriculture, Conservation, and Trade Act of 1990, § 1422, Pub. Law No. 101-624, 104 Stat. 3359 (Nov. 28, 1990); 16 U.S.C. § 3822(a)(4) (Nov. 28, 1990). Thus, prior to 1996, Swampbuster gave Defendants discretion to determine when it was "appropriate" to "periodic[ally] review" wetlands certifications. *Id.* But the 1996 amendments removed that discretion, requiring NRCS to review a wetland delineation when "the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4); *see also id.* § 3822(a)(6).

Finally, NRCS's refusal to accept the requests for review frustrate the statute's purpose. The purpose of a wetlands certification is to provide a safe harbor for producers. 16 U.S.C. § 3822(a)(6); *B & D Land & Livestock Co.*, 332 F. Supp. 2d at 1209 (noting Plaintiff's argument "that the finality of wetlands determinations is for the benefit of producers, not the USDA" and later accepting that argument). Swampbuster provides that "No person shall be adversely affected because of having taken an action based on a previous certified wetland delineation by the Secretary." 16 U.S.C. § 3822(a)(6). A wetland delineation is a safe harbor for producers, not an enforcement mechanism for the agency. If the agency brings an enforcement action, it must independently prove the existence of a wetland, regardless of whether there is an existing wetland certification. *See B & D Land & Livestock Co.*, 332 F. Supp. 2d

at 1216. Contrary to Defendants' argument, following the plain language of the statute does not frustrate the statute's purpose.

Defendants incorrectly argue that their regulations are entitled to *Chevron* deference. Defendants' Brief at 26. But "courts do not defer to an agency interpretation that is 'inconsistent with the plain language of the statute or constitutes an unreasonable interpretation of an ambiguous statute.'" *B & D Land & Livestock Co.*, 332 F. Supp. 2d at 1211 (quoting *Afolayan v. INS*, 219 F.3d 784, 787 (8th Cir. 2000)). Contrary to Defendants' argument, the regulations do not merely define how a producer can request a review. Defendants' Brief at 25–26. Rather, the regulations *prohibit* a review unless a producer proves one of two criteria. 7 C.F.R. § 12.30(c)(6) ("A person may request review of a certification *only if* …." (emphasis added)). The regulation contradicts the statutory language by turning a right to review into a presumption against review.

Defendants also argue that the Fosters are improperly trying to challenge the previous wetland determination. Defendants' Brief at 25. Even if Defendants' characterization were accurate, "subsection (a)(4) expressly provides for *a second administrative challenge* to a wetland determination, *after* the final certification of the wetland has become final, when a person affected by the certification requests review of the certification by the Secretary." *B & D Land & Livestock Co.*, 332 F. Supp. 2d at 1213 (emphasis in original). Here, the Fosters have provided new information in their request for review, Facts ¶ 28, but that is irrelevant to their right to review. *See Branstad III*, 212 F. Supp. 2d at 997. Regardless of whether the Fosters

20

have provided new information, their previous "wetland determination that has become 'final' and 'certified' pursuant to § 3822(a)(3) is not 'unreviewable,' because § 3822(a)(4) expressly provides for a further administrative challenge to that wetland determination." *B & D Land & Livestock Co.*, 332 F. Supp. 2d at 1213.

"[I]n light of the plain language of the statute, the statute must be read to mean that any person subsequently affected by an existing wetland determination may invalidate the existing certification by requesting review of the certification by the Secretary." *Branstad III*, 212 F. Supp. 2d at 997 (emphasis omitted). The Fosters, affected by the existing 2011 wetland determination, requested a review of that certification.[4] Under the terms of the statute, the Fosters are entitled to a review of the existing wetland determination and an order invalidating the existing determination. This Court should hold unlawful and set aside NRCS's Review Regulation, order NRCS to accept the Fosters 2017 and 2020 requests for reviews, and—as a result of the 2017 and 2020 requests—vacate the 2011 wetland determination.

## B. Even if the Fosters were required to submit new information to NRCS, they did so in the 2020 Request

In response to the 2017 Request, NRCS directed the Fosters to "supply additional information that has not previously been considered by NRCS." Facts ¶ 24; AR00009. As demonstrated above, the plain language of the statute does not require a producer to provide new information to get a review of an existing wetland

---

[4] In 2017, the Fosters even explicitly asked for a review by the Secretary. Facts ¶ 25; AR000009. NRCS refused that request based on their regulations. *Id.*

determination. 16 U.S.C. § 3822(a)(4). But even if Defendants' requirement for new information were a permissible interpretation of the statute, the Fosters complied with that requirement.

The Fosters complied with NRCS's request by submitting new expert reports about the hydrology of the purported wetland. Facts ¶¶ 27–29. As the district court stated in its opinion regarding the 2011 Certification, the Fosters previously "presented no expert testimony or evidence with respect to the agency's wetland determination procedures." *Foster v. Vilsack*, No. CIV. 13-4060-KES, 2014 WL 5512905, at *15 (D.S.D. Oct. 31, 2014), *aff'd*, 820 F.3d 330 (8th Cir. 2016). The 2020 request, on the other hand, includes expert, technical information from Banner Associates and Wenck Associates about how the tree belt affects the hydrology of the purported wetland. Facts ¶ 27. Thus, the Fosters complied with NRCS's request to supply information not previously considered. Indeed, Assistant State Conservationist Deke Hobbick admits, in the declaration attached to Defendants' motion, that "the information submitted with the 2020 request included newly created data in the engineer's report and conclusions based on that data …." Declaration of Deke Hobbick, Doc. 24 ¶ 7. Under NRCS's own stated policies, the agency should have accepted the Fosters' 2020 review. *See Nat'l Conservative Pol. Action Comm. v. Fed. Election Comm'n*, 626 F.2d 953, 959 (D.C. Cir. 1980) ("Agencies are under an obligation to follow their own regulations, *procedures, and precedents*,

or provide a rational explanation for their departures." (emphasis added).[5] The agency's failure to do so is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See id.*

The Fosters' new technical report provides new information about the hydrology of the purported wetland. Previously, NRCS inferred that the area was not an artificial wetland based on its analysis of the hydric soils. *See Foster*, 2014 WL 5512905, at *15. But hydric soils are only one factor in determining whether an area is a wetland. 16 U.S.C. § 3801(a)(27), *id.* § 3801(a)(12), (13). The new technological information demonstrates that the hydrology of the area is a result of the tree belt, calling into question NRCS's previous conclusion that the area is a naturally occurring wetland. Facts ¶¶ 8–9; AR000014; AR000038; AR000022–35. At a minimum, the agency should review the 2011 Certification in light of the new reports and engage with the new data.

Yet, in response to this new information, NRCS gave a cursory response, stating "[t]he work was reviewed in depth and compared to the agency record. Based

---

[5] In 2008, the Fosters received a review of the 2004 delineation by presenting to NRCS new information about the hydrology of the area and filing form AD-1026. Facts ¶ 16; AR000376; AR000267; AR000102. Now, NRCS has stated it will not review the 2011 Certification (and has told the Fosters they are not allowed to file a form AD-1026) despite the Fosters once again presenting new information about the hydrology of the area. Declaration of Deke Hobbick, Doc. 24 ¶¶ 4, 9. NRCS seems to have changed its standards for accepting review of a wetland certification, despite no change in the relevant portions of the statute or the relevant regulations. This further demonstrates that NRCS's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Pol. Action Comm.*, 626 F.2d at 959 ("[P]rior notice is required where a private party justifiably relies upon an agency's past practice and is substantially affected by a change in that practice.").

upon the evidence you provided, I am unable to determine that any of the conditions [for review] mentioned above for a redetermination apply." Facts ¶ 31; AR000038. NRCS did not explain how it reviewed the new reports or what it thought was deficient about the data. NRCS's conclusory refusal to accept the Fosters' request for review is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (An agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (quotations omitted)). This Court should direct the agency to accept the Fosters' requests for review of the 2011 Certification and—as a result of those requests—vacate the 2011 Certification.

## III. NRCS's regulations violate the Fosters' procedural due process rights

Furthermore, even if the Review Regulation were consistent with Swampbuster, it is unenforceable because it violates the Fosters' right to due process of law. The Fosters have an interest protected by the Due Process Clause. They have a statutory right to a review of the certified wetland determination. 16 U.S.C § 3822(a)(4); § 3822(a)(6); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 430–31 (1982) (recognizing right to use statutory adjudicatory procedures as a "species of property protected by" the federal Due Process Clause). The Fosters have an interest in the agricultural benefit programs governed by Swampbuster. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (holding that public assistance benefits are a right protected by the Due Process Clause). Finally, the Fosters have an interest

in productive use of their property. *Harris v. Cty. of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990) ("'The right of [an owner] to devote [his] land to any legitimate use is properly within the protection of the Constitution ....'" (quoting *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121 (1928))).

Although the amount of process that is due depends on the interest at issue, *see Goldberg*, 397 U.S. at 263, here it makes little difference how the Fosters' interests are characterized. As Defendants' briefing makes clear, NRCS offers no process whatsoever for the Fosters to review the wetland delineation. Defendants' Brief at 18. NRCS alone will decide whether to review, at their sole discretion. *Id.*; *but see Goldberg*, 397 U.S. at 271 (noting that "an impartial decision maker is [an] essential" component of due process). The Fosters have no administrative avenue to appeal NRCS's refusal to review the delineation. And the agency believes that no judicial review is available to the Fosters. This lack of *any* process is a violation of the Fosters' due process rights. *See Byrd v. Haas*, 17 F.4th 692, 697–98 (6th Cir. 2021) ("But a government agency cannot simply end-run judicial review by sitting on its hands and allowing a claimant's request to languish in a bureaucratic black hole."); *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980) ("We are convinced that due process can be denied by any substantial retardation of the appellate process ...." (citations omitted)); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 150 (D. Mass. 2007) (The "duty to act is no duty at all if the deadline is eternity."). Contrary to Defendants' contention, Defendants' Brief at 27–28, the review regulation does not provide an opportunity to

be heard at a meaningful time and in a meaningful manner because it does not provide an opportunity to be heard *at all.*

Courts have noted that the Swampbuster regulations have forced producers "to navigate a bureaucratic labyrinth …." *Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 857 (6th Cir. 2015). But here, there is not even a labyrinth available to the Fosters. This lack of any available process denies the Fosters of Due Process. *See Goss v. Lopez*, 419 U.S. 565, 579 (1975) ("The fundamental requisite of due process of law is the opportunity to be heard …." (quotations omitted)). This Court should hold the Review Regulation unlawful and direct Defendants to review the 2011 certified wetland delineation.

## IV. Even if NRCS's regulations were consistent with the statutory language, they are unenforceable because they have not been submitted under the Congressional Review Act

### A. The CRA does not preclude judicial review of an agency's failure to submit a rule

Additionally, Defendants may not enforce the Review Regulation because it has not been submitted to Congress and the Comptroller General under the CRA. 5 U.S.C. § 801(a)(1)(A). Defendants believe that § 805 of the CRA prevents this Court from reviewing the agency's failure to comply with the statute's requirements. Defendants' Brief at 14–15. But "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015). Because "legal lapses and violations occur, and especially so when they have no consequence" courts have "long applied a strong presumption favoring judicial review of administrative action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife*

*Serv.*, 139 S. Ct. 361, 370 (2018) (quotations omitted). An agency bears the "heavy burden ... to show that Congress prohibit[ed] all judicial review of the agency's compliance with a legislative mandate." *Mach Mining*, 575 U.S. at 486 (quotations and alteration omitted). Here, Defendants have not met their burden.

To show that § 805 precludes judicial review, Defendants must provide "clear and convincing indications, drawn from specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole, that Congress intended to bar review." *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261, 273 (2016) (quotations omitted). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Courts begin with a strong presumption that Congress intends judicial review of administrative action, and narrowly construe any provisions prohibiting judicial review. *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011); *United States v. Dohou*, 948 F.3d 621, 626 (3d Cir. 2020).

The text of § 805 does not unambiguously preclude judicial review of an agency's failure to submit a rule. It states that "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. The text does not explicitly say whose determinations, findings, actions, or omissions are precluded from judicial review. The tools of statutory construction—as well as the CRA's statutory scheme, objectives, and legislative history—demonstrate that the

27

CRA forecloses the actions of *Congress* from judicial review, but not the actions of *federal agencies*.

Defendants' interpretation of § 805 fails to give effect to all the words in the provision. Agencies do not make "findings" or "determinations" under the CRA. Congress, on the other hand, makes "determination[s], finding[s]" and decides whether to approve a joint resolution of disapproval. *See* 5 U.S.C. §§ 801, 802. Under the "principle of *noscitur a sociis*—a word is known by the company it keeps—" courts "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States*, 574 U.S. 528, 543 (2015) (quotations omitted). In other words, when "several items in a list share an attribute," it "counsels in favor of interpreting the other items as possessing that attribute as well." *Beecham v. United States*, 511 U.S. 368, 371 (1994). All the words in § 805 apply to Congress's role under the CRA but only a few words apply to agencies' actions. Thus, the text suggests that § 805 precludes judicial review of Congress's role under the CRA, but not agency actions. Interpreting § 805 to preclude judicial review of agency action does not give effect to the entire provision. *See Kansas Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1245–57 (10th Cir. 2020) (Lucero, J., dissenting).

Furthermore, agencies and agency actions are noticeably absent from CRA's judicial review limitation. When Congress has intended to prevent review of agency action, it has explicitly said so. In the original 1980 enactment of the Regulatory Flexibility Act ("RFA"), another law meant to check agency power, Congress explicitly excluded agency action from its judicial review provision. *See* Pub. L. No. 96-354,

§ 3(a), 94 Stat. 1164, 1165–70 (Sept. 19, 1980). Later, Congress—in the same multi-title bill in 1996 that enacted the CRA—recognized that precluding review under the RFA was a mistake and eliminated the agencies' protections from judicial review. *See* 5 U.S.C. § 611 (authorizing judicial review of agency actions). Unlike the earlier version of the RFA, § 805 of the CRA neither explicitly includes nor excludes agencies' actions or omissions. This absence further demonstrates that Congress did not intend to foreclose judicial review of agency actions under the CRA.

Defendants' interpretation of § 805 is thus undermined by the context of the CRA's adoption. In the same bill that added the CRA, Congress removed the limitations on judicial review of agency actions under the RFA because agencies were ignoring the requirements of the RFA. *See also* 142 Cong. Rec. H2986, H3016 (daily ed. Mar. 28, 1996) (statement of Rep. Ewing) ("[W]ithout judicial review, the Federal regulators will continue to ignore the RFA."); 142 Cong. Rec. at H3005 (statement of Mr. McIntosh) ("[J]udicial review ... will serve as a needed check on agency behavior and help enforce the mandate of the [RFA]."); *see United States v. S. Indiana Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523, at **4–6 (S.D. Ind. Oct. 24, 2002) (unpublished) (relying on the RFA's history to interpret the CRA). Yet Defendants argue that Congress intended to preclude judicial review of the new CRA requirements, while recognizing in the same bill that a lack of judicial review results in agencies ignoring statutory requirements. Defendants' interpretation leads to the unreasonable conclusion that Congress passed the CRA knowing that, without judicial review, agencies would ignore its requirements.

Defendants' interpretation also frustrates the objectives of the CRA and would render many of its provisions void. *Cf. U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (Citing "well-established principles of statutory interpretation that require statutes to be construed in a manner that gives effect to all of their provisions."). For example, the CRA provides that the enactment of a disapproval resolution bars the agency from adopting the same or any "substantially similar" rule in the future, unless Congress explicitly authorizes it to do so. 5 U.S.C. § 801(b). Congress, however, does not enforce this anti-circumvention provision. Instead, this provision can only operate if courts enforce it against recalcitrant agencies by striking down or blocking the enforcement of rules impermissibly similar to disapproved rules. *Tugaw Ranches, LLC v. U.S. Dep't of Interior*, 362 F. Supp. 3d 879, 883 (D. Idaho 2019); Michael J. Cole, *Interpreting the Congressional Review Act: Why the Courts Should Assert Judicial Review, Narrowly Construe "Substantially the Same," and Decline to Defer to Agencies Under* Chevron, 70 Admin. L. Rev. 53, 68 (2018).

Barring judicial review under the CRA would render the "substantially similar" provision meaningless. Under Defendants' interpretation of § 805, if Congress and the President disapproved a rule, the agency could reissue the exact same rule and, by refusing to send it to Congress, avoid any consequences. Without judicial review of the agency's actions under the CRA, the agency could enforce this *ultra vires* rule against private parties with impunity, including through the imposition of criminal penalties. *But see United States v. Reece*, 956 F. Supp. 2d 736, 743–44 (W.D. La. 2013) (holding that judicial review is available under the CRA); *cf.*

Paul J. Larkin, Jr., *Reawakening the Congressional Review Act*, 41 Harv. J.L. & Pub. Pol'y 187, 227 (2018) (explaining that Defendants' interpretation would raise significant Due Process concerns). This Court should not interpret § 805 to render the CRA meaningless.

The CRA's severability clause casts further doubt on Defendants' interpretation of § 805. Like other severability clauses, the CRA's clause allows any invalid part of the statute to be severed from the rest of the statute. 5 U.S.C. § 806. If Defendants were correct that the CRA prevents judicial review, the severability clause is meaningless. A court would never invalidate a portion of the CRA because it would never review the CRA. Therefore, the severability clause would be surplusage unless, contrary to Defendants' position, there are at least some CRA claims that could be reviewed.

Finally, the CRA's legislative history supports the position that § 805 does not preclude judicial review. The CRA's sponsors in both houses of Congress published a joint statement squarely addressing this question, acknowledging Congress' "expect[ation] that a court might recognize that a rule has no legal effect due to the operation of [the CRA's rule-submission requirement]." 142 Cong. Rec. at S3686. The sponsors explained that § 805 bars review only of "the major rule determinations" made by the Office of Management and Budget and "whether Congress complied with the congressional review procedures[.]" *Id.* However, it "does not bar a court from giving effect to a resolution of disapproval." *Id.* According to the CRA's sponsors, "[t]he limitation on judicial review in no way prohibits a court from determining

31

whether a rule is in effect" due to compliance with the rule-submission requirement. *Id.* Thus, the clearest expression of Congress' intent on this question favors judicial review. 142 Cong. Rec. at S3683 (explaining that "no other expression of [the CRA's] legislative history exists" and, thus, the CRA's sponsors "intended" their joint statement "to provide guidance to the agencies, the courts, and other interested parties when interpreting the act's terms").

In an attempt to avoid its burden to show that § 805 precludes judicial review of agency action, Defendants frame the question as whether the CRA waives sovereign immunity and allows for a challenge under the statute. Defendants' Brief at 14. But that is not the issue here. The APA waives sovereign immunity and forecloses review only when a statute precludes judicial review or agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). Judicial review is presumed under the APA, and Defendants bear the heavy burden of demonstrating that a statute precludes review. *Mach Mining*, 575 U.S. at 486. Here, Defendants have not met their burden, and this Court should review the Fosters' claim that NRCS's regulation is unenforceable because it has not been submitted to Congress and the GAO under the CRA.

Defendants also cite several cases to support its position, Defendants' Brief at 15, but this is a question of first impression in the Eighth Circuit. Other courts or judges have held or stated that the CRA does not preclude judicial review of an agency's failure to submit a rule. *Kansas Nat. Res. Coal.*, 971 F.3d at 1245–57 (Lucero, J., dissenting); *Tugaw Ranches*, 362 F. Supp. 3d at 882–89; *Reece*, 956 F.

Supp. 2d 736; *S. Indiana Gas & Elec. Co.*, 2002 WL 31427523. The debate is not as one sided as Defendants argue, and the opinions holding that § 805 does not preclude judicial review of agency actions are more thorough and recognize the heavy presumption in favor of judicial review. *See id.* This Court should independently determine whether the CRA precludes judicial review and, based on the strong presumption in favor of judicial review, this Court should decide the Fosters' CRA claims.

### B. NRCS agrees that the agency has not submitted the regulations

Under the CRA, Defendants were required to submit the Review Regulation before it went into effect. 5 U.S.C. § 801. The Review Regulation is a "rule" subject to the CRA. The statute defines "rule" broadly as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy ...." 5 U.S.C. § 551(4); 5 U.S.C. § 804 (defining "rule" in reference to 5 U.S.C. § 551(4)). The Swampbuster Regulations are a statement of general applicability and future effect, by the Defendants USDA and NRCS, designed to implement Swampbuster. 7 C.F.R. §§ 12.1–12.13 and 12.30–12.34. Interim final rules are rules within the meaning of the CRA. *See Career College Ass'n v. Riley*, 74 F.3d 1265, 1268 (D.C. Cir. 1996) ("The key word in the title 'Interim Final Rule,' unless the title is to be read as an oxymoron, is not interim, but *final*."); Congressional Research Service, *The Congressional Review Act (CRA): Frequently Asked Questions* at 8 (Nov. 12, 2021).[6]

---

[6] *Available at* https://sgp.fas.org/crs/misc/R43992.pdf.

Defendants, however, have not submitted the Review Regulation to Congress or the Comptroller General, as required by the CRA. Defendants admit that the rule has not been submitted. Facts ¶ 36. The Rule does not appear in the GAO's database of rules submitted. U.S. Government Accountability Office, *Congressional Review Act*.[7] The rule also does not appear in the list of executive communications to the two houses of Congress. *See, e.g.*, U.S. Senate, *How to find Executive Communications*.[8]

Defendants have submitted later amendments to the Review Regulation, but that does not affect the failure to submit the original version of the Review Regulation.[9] Under the CRA, Congress reviews only the rule that was submitted to them—not earlier, related rules. 5 U.S.C. § 802(a). If Congress were to pass a resolution of disapproval, it would apply only to the amendments, not to the underlying regulations. *Id.* (Stating that the joint resolution shall state "That Congress disapproves the rule submitted by the __ relating to __, and such rule shall have no force or effect.").

Because Defendants have not submitted the Review Regulation under the CRA, it is not in effect now and was not in effect when the Fosters submitted their

---

[7] https://www.gao.gov/legal/other-legal-work/congressional-review-act

[8] *Available at* https://www.senate.gov/reference/common/faq/how_to_executivecommunications.htm.

[9] Unlike the 1996 rule, these later rules appear in the GAO's database. *See* https://www.gao.gov/fedrules/199916; https://www.gao.gov/fedrules/189170; https://www.gao.gov/fedrules/169685.

requests for review. 5 U.S.C. § 801(a)(1)(A). Therefore, even if the regulation were consistent with Swampbuster, it is unenforceable now and was unenforceable when Defendants denied the Fosters' requests for review. Because NRCS's denial was based solely on the not-in-effect Review Regulation, the agency unlawfully denied the Fosters' requests for review. This Court should direct the agency to accept the Fosters' requests for review of the 2011 Certification, and—as a result of those requests— vacate the 2011 Certification.

**V.    Swampbuster imposes an unconstitutional condition on the Fosters and exceeds Congress' power under the Commerce Clause**

Finally, Defendants' enforcement of the Review Regulation, and refusal to rescind the 2011 Certification, is "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. 706(2)(B), because Swampbuster is an unconstitutional exercise of Congressional power. Swampbuster violates the Commerce Clause by conditioning receipt of agricultural benefit programs on producers' submittal to regulations of wetlands Congress would not otherwise be able to regulate.

**A. This Court has jurisdiction to hear the Fosters' Commerce Clause Challenge**

This Court should deny Defendants' motion to dismiss the First Claim for Relief. As an initial matter, Defendants waived their opportunity to assert a statute of limitations defense by failing to raise it in their Answer. *See* Answer (Doc. 13); Fed.R.Civ.P. 8(c); *Clark v. Martinez*, 295 F.3d 809, 815 (8th Cir. 2002) ("A party generally waives an affirmative defense if it fails to assert the defense in its responsive pleadings.") Thus, Defendants can only now make a statute of limitations argument if the statute of limitations goes to this Court's subject-matter jurisdiction.

While the Eighth Circuit has historically characterized the statute of limitations in 28 U.S.C. § 2401(a) as jurisdictional, the court has questioned that characterization after *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). *See Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. U.S. Army Corps of Eng'rs*, 888 F.3d 906, 917 n.4 (8th Cir. 2018). In *Sisseton-Wahpeton Oyate of Lake Traverse Reservation*, the court declined to consider the effect of *Wong* on 28 U.S.C. § 2401(a) only because it did not have to reach that issue to decide the case, but noted other Circuits have held 28 U.S.C. § 2401(a) to be non-jurisdictional after *Wong*. *Id.* (citing *Herr v. U.S. Forest Service*, 803 F.3d 809 (6th Cir. 2015); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017)). In light of *Wong*, this Court should hold that the statute of limitations in 28 U.S.C. § 2401(a) is not jurisdictional, and that Defendants waived their argument that the First Claim for Relief is outside the statute of limitations.

But regardless of whether the statute of limitations is jurisdictional, this Court should reject Defendants' argument that the Fosters' Commerce Clause challenge is time-barred. *See* Defendants' Brief at 13–14. In determining whether a civil action is time-barred under the six-year statute of limitations, the key inquiry is when the right of action accrued. *Loudner v. United States*, 108 F.3d 896, 900 (8th Cir. 1997). A claim "against [the] United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009) (quotations omitted). Further, under 28 U.S.C. § 2401(a), a claim accrues when "the plaintiff either knew, or in the exercise of reasonable diligence

36

should have known, that [he or she] had a claim." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 678 F.3d 626, 629 (8th Cir. 2012) (quoting *Izaak*, 558 F.3d at 759). Defendants argue that the Fosters' Commerce Clause claims accrued for purposes of 28 U.S.C. § 2401(a) on any of four different occasions that fall outside the six-year statute of limitations. Defendants' Brief at 14. Defendants are mistaken.

The Fosters' claims accrued for purposes of 28 U.S.C. § 2401(a) in 2020, when Defendants refused to rescind the 2011 Certification in response to the Fosters' 2017 and 2020 requests for review. This refusal was new, final agency action under the APA, *Sackett*, 566 U.S. at 126–27, and therefore was the only time when "all the events have occurred which fix the liability of the Government ...." *Chandler v. U.S. Air Force*, 255 F.3d 919, 921 (8th Cir. 2001). The Fosters' injury is directly traceable to the 2017 and 2020 denials, placing the Fosters within the six-year statute of limitations.

Additionally, the Fosters' situation is distinguishable from those cases where claims were held to be time-barred. For example, in *Andersen v. U.S. Dep't of Hous. & Urb. Dev.*, the court held that the plaintiff's claims against the government were time-barred because he waited twenty years to initiate his suit and did not exercise reasonable diligence in pursuing his claims. 678 F.3d 626, 627 (8th Cir. 2012). And in *Izaak*, the court held that the plaintiffs' claims were time-barred because *all* the harms that they complained of were evident no later than 1980, yet plaintiffs filed suit almost three decades later. 558 F.3d at 761. By contrast here, the Fosters' claims accrued recently, with Defendants' refusal to rescind the 2011 Certification in

response to the 2017 and 2020 requests for review. All the Fosters' harm is traceable to those denials and the Fosters have diligently pursued their claims since then. Thus, those claims are within the statute of limitations. This Court should deny Defendants' motion to dismiss the First Claim for Relief.

### B. Swampbuster is an unconstitutional exercise of Congressional Power under the Commerce Clause

Swampbuster by its plain language regulates land, and specifically wetlands, which are immovable parcels of real property. 16 U.S.C. § 3801(a)(27) ("The term 'wetland' ... means land[.]"). Moreover, Swampbuster does not limit its regulation to those wetlands that are adjacent to or connected to navigable waters. *See id*. Rather, Swampbuster reaches features that are purely intrastate. Thus, Swampbuster exceeds Congress's power under the Commerce Clause.

The Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. art. I, § 8, cl. 3. But this power is not without limits. *Solid Waste Ag. of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173–74 (2001); *United States v. Lopez*, 514 U.S. 549 (1995). Congress's Commerce Clause power is limited to regulating the channels of interstate commerce, the instrumentalities of interstate commerce and goods in interstate commerce, and intrastate activity that has a substantial effect on interstate commerce. *Lopez*, 514 U.S. at 558–59. Swampbuster does not fall into any of the above categories.

First, intrastate wetlands, like those regulatable under Swampbuster, are not channels of interstate commerce. When discussing channels of interstate commerce,

the Supreme Court has referred generally to highways and waterways that are interstate. *See, e.g.*, *United States v. Darby*, 312 U.S. 100, 114 (1941); *Heart of Atlanta Motel, Inc., v. United States*, 379 U.S. 241 (1964). But unlike the regulations upheld in *Darby* and *Heart of Atlanta*, Swampbuster does not limit its reach to only those features that operate as channels of interstate commerce. Rather, Swampbuster regulates *all* wetlands, regardless of how isolated they are from navigable waterways. 16 U.S.C. § 3801(a)(27).

Second, the wetlands regulated under Swampbuster are not instrumentalities of interstate commerce. When discussing instrumentalities of interstate commerce, the Supreme Court has referred generally to those things that transport the goods in interstate commerce, such as railcars and trucks. *Houston, E. & W. Tex. Ry. Co. v. United States*, 234 U.S. 342 (1914) (railcars); *Caminetti v. United States*, 242 U.S. 470, 491 (1917) (railcars). Wetlands like those regulatable under Swampbuster are not like railcars, and thus are not instrumentalities of interstate commerce.

Finally, wetlands alone, like those regulatable under Swampbuster, have no substantial effect on interstate commerce. The Supreme Court has held that Congress can regulate intrastate activities only if those activities "substantially affect" interstate commerce. *Lopez*, 514 U.S. at 559; *Darby*, 312 U.S. at 119–20; *Wickard v. Filburn*, 317 U.S. 111, 125 (1942); *Katzenbach v. McClung*, 379 U.S. 294, 299–300 (1964). In *Lopez*, the Court held that the Gun-free School Zone Act was beyond Congress's authority under the Commerce Clause. 514 U.S. at 551. The Court rejected the government's claim that possession of a gun in the general vicinity of a school

negatively impacts productivity, and therefore interstate commerce. *Id.* at 563. The Court held that to find a substantial effect would require the Court to "pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567. Swampbuster presents the same problem as in *Lopez*. Because the wetlands reachable under Swampbuster do not need to have a connection to any other property or water body, this Court would have to "pile inference upon inference" to find that an isolated water feature, like that alleged to exist on the Fosters' farm, has any, let alone a "substantial," effect on interstate commerce.

Whether Swampbuster directly regulates private land is irrelevant. *See* Defendants' Brief at 22 (arguing that Swampbuster does not directly regulate private land). Under the unconstitutional conditions doctrine, although the government may have the power to deny a privilege altogether, it may not condition the grant of such a privilege on a private party's surrender of a constitutional right. *See L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012). Here, Swampbuster conditions the receipt of benefits based on whether a producer farms an intrastate wetland, even though the federal government could not directly regulate those wetlands under the Constitution. "The limitations that federalism entails are not … a matter of rights belonging only to the States." *Bond v. United States*, 564 U.S. 211, 222 (2011). "Federalism also protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions." *Id.* Swampbuster unconstitutionally

conditions the receipt of benefits on producers' waiver of the constitutional protections provided by the Commerce Clause and, thus, is an unconstitutional exercise of Congressional power.

### C. Swampbuster exceeds Congress's power under the Spending Clause

In defense of Swampbuster, Defendants argue that it is a valid exercise of Congress's Spending Power. Defendants' Brief at 19. Not so. The Supreme Court has noted that the "danger is heightened when Congress acts under the Spending Clause, because Congress can use that power to implement federal policy it could not impose directly under its enumerated powers." *NFIB v. Sebelius*, 567 U.S. 519, 578 (2012). Thus, while Congress may use its Spending Clause authority to attach conditions on the grant of federal funds, this power is limited. *Id.* at 585; *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). Congress cannot, consistent with the spending power, use "financial inducements to exert a 'power akin to undue influence.'" *Sebelius*, 567 U.S. at 577 (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 590 (1937)). In that instance, "pressure turns into compulsion." *Steward Machine Co.*, 301 U.S. at 590.

Legislation enacted under the Spending Clause is unduly coercive when it leaves potential recipients of federal funds with no real alternative but to accept. *Sebelius*, 567 U.S. at 578; *New York v. United States*, 505 U.S. 144, 149 (1992). In *Sebelius*, twenty-six states challenged the requirement in the Affordable Care Act that they choose between Medicaid expansion or loss of all Medicaid funding. *Sebelius*, 567 U.S. at 542. The Court held that this portion of the Affordable Care Act violated the Spending Clause because the risk of losing all Medicaid funding meant

41

that Congress had not provided the states with a meaningful choice. *Id.* at 581. Rather, the Court concluded, "the financial 'inducement' Congress has chosen is much more than 'relatively minor encouragement'—it is a gun to the head." *Id.*

Federal Defendants ignore the importance that coercion plays in any Spending Clause analysis. Despite an assertion that the *Dole* limitations do not apply, Defendants' Brief at 22, Defendants do not acknowledge that *Dole* explicitly states that "in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole*, 483 U.S. at 211. And Defendants do not even cite *Sebelius*. Instead, Defendants cite to *United States v. Dierckman*, 201 F.3d 915 (7th Cir. 2000), which is not binding on this Court and was decided over a decade before *Sebelius* for the proposition that Swampbuster is a valid exercise of the spending power. Defendants are mistaken.

Swampbuster is unduly coercive under the reasoning articulated in *Dole* and *Sebelius*. A person who is found to have violated Swampbuster is disqualified from several federally authorized agricultural benefit programs and could lose all their USDA benefits. 16 U.S.C. § 3821; *Dierckman*, 201 F.3d at 917 (Dierckman declared ineligible for all USDA benefits by USDA for alleged violation of Swampbuster); *B & D Land and Livestock Co*, 332 F. Supp. 2d at 1204 (Plaintiffs faced with total loss of USDA benefits from the year of the alleged violation onward). Participation in these farm assistance programs is often the only way farmers, like the Fosters, can make a living. Facts ¶ 14. As a result, farmers are left with little alternative but to submit to Swampbuster's coercive regulatory scheme. By threatening eligibility for

USDA programs, Swampbuster does not act like the "financial inducements," previously upheld by the Court as valid exercises of the spending power, but rather operates as "compulsion," *Dole*, 483 U.S. at 211, and a "gun to the head." *Sebelius*, 567 U.S. at 581.

Under the Constitution, Congress could not directly regulate all wetlands in the United States. It also cannot indirectly regulate those wetlands by conditioning the receipt of benefits on compliance with wetland regulations. Therefore, Defendants' failure to rescind the 2011 Certification is "contrary to constitutional right, power, privilege, or immunity" 5 U.S.C. 706(2)(B).

## CONCLUSION

This Court should deny Defendants' motion to dismiss and grant the Fosters' motion for summary judgment. This Court should hold unlawful and set aside NRCS's review regulation, order NRCS to accept the Fosters 2017 and 2020 requests for reviews, and—as a result of the 2017 and 2020 requests—vacate the 2011 wetland determination.

DATED: January 10, 2022.

Respectfully submitted,

/s/ *Christopher Sommers*

JEFFREY W. McCOY *                    CHRISTOPHER SOMMERS
Cal. Bar No. 317377                    Redstone Law Firm LLP
Pacific Legal Foundation               1300 W. 57th Street, Suite 101
930 G Street                           Sioux Falls, SD 57108
Sacramento, CA 95814                   Telephone: (605) 444-2801
Telephone: (916) 419-7111              Email: chris@redstonelawfirm.com
Email: JMcCoy@pacificlegal.org
* *Pro Hac Vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of D.S.D. Civ. LR 7.1(B)(1) because it contains 11,990 words.

DATED: January 10, 2022.

Respectfully submitted,

/s/ *Christopher Sommers*

JEFFREY W. McCOY *
Cal. Bar No. 317377
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Email: JMcCoy@pacificlegal.org
* *Pro Hac Vice*

CHRISTOPHER SOMMERS
Redstone Law Firm LLP
1300 W. 57th Street, Suite 101
Sioux Falls, SD 57108
Telephone: (605) 444-2801
Email: chris@redstonelawfirm.com

*Counsel for Plaintiffs*