UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ARLEN FOSTER,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE, TOM VILSACK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE; THE NATURAL RESOURCES CONSERVATION SERVICE, TERRY COSBY, IN HIS OFFICIAL CAPACITY AS ACTING CHIEF OF THE NATURAL RESOURCES CONSERVATION SERVICE; AND TONY SUSERI, IN HIS OFFICIAL CAPACITY AS ACTING SOUTH DAKOTA STATE CONSERVATIONIST;<br><br>Defendants. | 4:21-CV-04081-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Arlen Foster ("Foster") owns a piece of farmland that was certified as a "wetland" in 2011 pursuant to the Swampbuster Act, 16 U.S.C. §§ 3801, 3821–3824. Foster brought this complaint against the United States Department of Agriculture ("USDA"), the Natural Resources Conservation Service ("NRCS"), and their named representatives (collectively "Defendants") seeking to set aside the 2011 wetland certification based on various legal theories including an Administrative Procedure Act ("APA") claim that Defendants' refusal to review the 2011 wetland certification was arbitrary and capricious. The parties filed cross-motions for summary judgment.

1

For the reasons discussed, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## I.      Facts and Procedural History

### A.      The Swampbuster Act

The Swampbuster Act, 16 U.S.C. §§ 3801, 3821–3824, refers to the wetland conservation provisions of the Food Security Act of 1985. See Barthel v. U.S. Dep't of Agric., 181 F.3d 934, 936 (8th Cir. 1999). The purpose of the Swampbuster Act is "to combat the disappearance of wetlands through their conversion into crop lands." B & D Land & Livestock Co. v. Schafer, 584 F. Supp. 2d 1182, 1190 (N.D. Iowa 2008) (citation omitted); see also Barthel, 181 F.3d at 937 ("The [Swampbuster] Act's proclaimed purpose is to preserve wetlands, or, if wetlands are altered, to preserve the conditions as altered."). As an enforcement mechanism, the Swampbuster Act sets forth that persons who convert certified wetlands to crop lands are disqualified from receiving federal farm benefits. 16 U.S.C. § 3821; Schafer, 584 F. Supp. 2d at 1190.

16 U.S.C. § 3822(a)(4) concerns the "Duration of Certification" and states that once an area is certified as a "wetland" under the Swampbuster Act, that certification remains valid and enforceable "as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4). In 1996, the Code of Federal Regulations imposed criteria on when a party could request review of a wetland certification, stating that a "wetland" certification "will remain valid and in effect until such time as the person affected by the certification requests review of the certification by NRCS. *A person may request review of a certification only if a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or if NRCS concurs with an affected person that an error*

2

*exists in the current wetland determination.*" 7 C.F.R. § 12.30(c)(6) (emphasis added).  Therefore, pursuant to 7 C.F.R. § 12.30(c)(6), a wetland certification is binding and enforceable if and until a person affected by the certification requests review of that certification and natural changes to the wetland make the certification unreliable, or until such a person requests review and NRCS agrees that the wetland certification is erroneous.

## B.  2011 Wetland Certification of Foster's Land

This case concerns .8 acres of land ("the site") in Miner County, South Dakota, which is covered by approximately 8.5 inches of water at points during the year.  Doc. 1 at 4, 7; Doc. 35 at 2–3; Doc. 38 at 5–6.  Foster's grandfather purchased land containing the site in 1900.  Doc. 1 at 5; Doc. 35 at 2.  Around 1936, Foster's father planted a tree belt on the south side of the site to prevent soil erosion.  Doc. 1 at 5–6; Doc. 35 at 2; Doc. 38 at 4.  Snow accumulated around the tree belt in the winter and melted in the spring, creating an 8.5 inch puddle or shallow pond on the site.  Doc. 1 at 7; Doc. 35 at 2; Doc. 36 at 3; Doc. 38 at 4.  Foster now owns the site and surrounding land, which he farms.  Doc. 1 at 3, 7–9; Doc. 35 at 2–3; Doc. 38 at 6.  In approximately half of the crop years, the water on the site will dry out in time to farm the site and the surrounding area.  Doc. 1 at 8; Doc. 35 at 3; Doc. 36 at 3.  In the other years, the site does not dry out, and the land surrounding it cannot be farmed without draining the site.  Doc. 1 at 8; Doc. 35 at 3; Doc. 36 at 3.

In 2004, the Natural Resources Conservation Service (NRCS) and the United States Department of Agriculture (USDA) reviewed the site and certified it as a "wetland" under 16 U.S.C. § 3822 of the Swampbuster Act.  Doc. 1 at 2; Doc. 35 at 4.  Due to the certification, Foster cannot drain the site to farm it and the surrounding land without losing the federal farm benefits on which he relies for his farming operation.  Doc. 35 at 3.

3

In 2008, Foster requested an administrative review of the wetland certification. Doc. 1 at 15; Doc. 35 at 4; Doc. 38 at 6. After several years of review, in June 2011, NRCS recertified the site as a wetland. Doc. 1 at 16; Doc. 35 at 4; Doc. 38 at 6. Foster administratively appealed that certification to the USDA, but the USDA upheld the certification. Doc. 1 at 16; Doc. 35 at 4. Foster then brought an action in federal district court under the Administrative Procedure Act (APA) arguing that the certification was arbitrary and capricious. Doc. 1 at 16; Doc. 22 at 2. Doc. 36 at 4; Doc. 38 at 7. The district court affirmed NRCS's decision to certify the site as a wetland. Foster v. Vilsack, No. CIV. 13-4060-KES, 2014 WL 5512905 (D.S.D. Oct. 31, 2014); Doc. 1 at 16; Doc. 22 at 2; Doc. 36 at 4; Doc. 38 at 7. Foster appealed to the United States Court of Appeals for the Eighth Circuit, which affirmed the district court in 2016. Foster v. Vilsack, 820 F.3d 330 (8th Cir. 2016); Doc. 1 at 16; Doc. 22 at 2. Doc. 36 at 4; Doc. 38 at 7.

In June 2017, Foster submitted another request to NRCS to review the 2011 wetland certification. Doc. 1 at 16; Doc. 36 at 4; Doc. 38 at 8. Consistent with 7 C.F.R. § 12.30(c)(6), NRCS responded that Foster needed to submit new information showing that the topography or hydrology of the site had changed so that the 2011 certification was no longer reliable, otherwise it would not review the certification. Doc. 1 at 16; Doc. 22 at 9; Doc. 24-1 at 9; Doc. 36 at 4–5.

In April 2020, Foster submitted another request to review the 2011 certification. Doc. 1 at 16; Doc. 38 at 8. In that request, Foster did not claim there had been a change to the topography or hydrology of the site as required by 7 C.F.R. § 12.30(c)(6). Doc. 24 at 5. However, he submitted an engineering report analyzing the volume of snow accumulation under the tree belt and providing an opinion that the site was an artificial wetland. Doc. 1 at 16–1; Doc. 24-1 at 22–35; Doc. 35 at 5; Doc. 38 at 8–9.

Deke Hobbick, an assistant state conservationist at NRCS, considered Foster's 2020 review request and the engineering report. Doc. 24 at 3–5. He concluded that the information presented in the report, concerning whether the site was an "artificial wetland," was previously considered and rejected by NRCS when reaching the 2011 wetland certification. Doc. 22 at 9; Doc. 24 at 4; Doc. 35 at 6. Hobbick also concluded Foster had not alleged or shown that there was any change in the topography or hydrology of the site, as required by 7 C.F.R. § 12.30(c)(6), which would qualify the 2011 wetland certification for review. Doc. 24 at 5. Hobbick submitted an affidavit explaining that:

> In reviewing the Fosters' 2020 request for review of the agency's final certified wetland determination, I reviewed the original information submitted by the Fosters in 2019 and the supplemental information received in 2020. Their request asserted that the area in question should be considered an artificial wetland, as defined in 7 C.F.R. § 12.2 . . . . *I reviewed the information and data that underlies the 2011 final wetland certification and observed that NRCS previously considered, on multiple occasions, whether or not a nearby shelter belt was causing an artificial wetland.* I also observed that the information submitted with the 2020 request included newly created data in the engineer's report and conclusions based on that data; however, the data and conclusions appeared to be based upon the same artificial wetland argument that the agency had considered and rejected in connection with the 2011 determination and subsequent administrative and judicial review. *The 2020 request also did not assert that there had been a natural change in the topography or hydrology of the area in question.* As a result of my review of the 2020 request and NRCS records, I recommended that the State Conservationist respond to the request by stating that NRCS was unable to determine whether any of the conditions identified in 7 C.F.R. § 12.30(c)(6) governing requests for review of a final certified wetland determination applied. . . . *[Foster has] not provided any further information that would permit review under the conditions sets forth in 7 C.F.R. § 12.30(c)(6).*

Doc. 24 at 4–5 (emphasis added). Consistent with Hobbick's conclusions, NRCS rejected Foster's request to review the 2011 wetland certification. Doc. 1 at 17; Doc. 35 at 6; Doc. 38 at 9.

In May 2021, Foster filed this complaint[1] raising five counts:

---

[1] The initial plaintiffs in this case were Arlen Foster and his wife Cindy Foster. Doc. 1. Cindy Foster has since passed away and was dismissed from this action. Doc. 33; Doc. 40; Doc. 44.

    1) Constitutionality of the Swampbuster Act;
    2) Whether 7 C.F.R. § 12.30(c)(6) contravenes the Congressional Review Act ("CRA"), 5 U.S.C. § 801;
    3) Whether 7 C.F.R. § 12.30(c)(6) violates the Swampbuster Act and the due process clause;
    4) Whether Defendants' denials of Foster's 2017 and 2020 requests for review were arbitrary and capricious under the APA;
    5) Claim that the 2011 wetland certification is no longer in effect.

Doc. 1 at 19–27. Defendants filed a motion to dismiss for lack of jurisdiction, failure to state a claim, judgment on the pleading, or alternatively for summary judgment, Doc. 21, and Foster responded with a cross-motion for summary judgment, Doc. 34. Foster also filed a motion to supplement the administrative record with three letters pertaining to the review process leading up to the 2011 wetland certification. Doc. 41; Doc. 42 at 1.

## II.    Legal Standards

Defendants bring their motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. 22 at 10–11. On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant is making a facial attack or factual attack on subject matter jurisdiction. Stalley v. Cath. Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). When a defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. Stalley, 509 F.3d at 521. A court's review then is limited to the face of the pleadings. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).

On the other hand, when a defendant attacks the factual basis for subject matter jurisdiction, a court can consider matters outside the pleadings, "and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6. "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted). In that case, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730 (citation omitted). Defendants consider their motion to dismiss for lack of jurisdiction to be a factual attack under which this Court may consider matters outside of the pleadings. See Doc. 22 at 10–11.

A judgment on the pleadings is reviewed under "the same standard used to address a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009) (cleaned up and citation omitted). Under this standard, "well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. . . . The facts alleged in the complaint must be enough to raise a right to relief above the speculative level." Id. (cleaned up and citations omitted).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). To establish that a material fact is genuinely disputed, the party opposing

summary judgment must "cit[e] to particular parts of materials in the record" that establish a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A), (B). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (cleaned up and citation omitted).

"There is authority for the proposition that a summary judgment motion should be denied whenever its proponent does not meet his initial burden" under Fed. R. Civ. P. 56(a). Handeen v. Lemaire, 112 F.3d 1339, 1347 (8th Cir. 1997). But the United States Court of Appeals for the Eighth Circuit has made clear that there is "no reason to prevent a district court from granting summary judgment if the unchallenged facts cannot, as it turns out, sustain a viable cause of action. In these situations, we agree with our counterparts on the Fifth Circuit that the submission should be evaluated similarly to a 12(b)(6) motion to dismiss. . . . Where a motion for summary judgment is based solely on the pleadings and makes no meaningful reference to affidavits, depositions, or interrogatories, it makes no difference whether the motion is evaluated under Rule 56 or Rule 12(b)(6) because both standards reduce to the same question." Id. (cleaned up and citations omitted); see also Ashe v. Corley, 992 F.2d 540, 544 (5th Cir. 1993). "Therefore, a court should grant [a] motion [for summary judgment[] and dismiss [an] action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Handeen, 112 F.3d at 1347 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. Discussion

### A. Constitutionality of the Swampbuster Act

8

Foster's first claim is that the Swampbuster Act violates the Commerce Clause and the Tenth Amendment. Doc. 1 at 19–22; Doc. 39 at 16–19. He argues that wetlands are neither an instrument of commerce nor have a substantial effect on interstate commerce, so the Swampbuster Act is outside of Congress's plenary power. Doc. 1 at 20; Doc. 36 at 35–41. Foster also claims that the Swampbuster Act violates the Tenth Amendment by usurping a state's police power over local land use. Doc. 1 at 21. Alternatively, he claims that the Swampbuster Act is outside of Congress's Article I § 8 spending power. Doc. 36 at 41–43. Defendants argue that Foster's constitutional claims are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a). Doc. 22 at 13–14; Doc. 37 at 3–6.

"Section 2401(a) of 28 U.S.C. is a general statute of limitations for suits against the government, which provides that 'every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.'" Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009) (quoting 28 U.S.C. § 2401(a)). "A claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Id. (cleaned up and citation omitted).

Defendants argue that Foster's claim accrued no later than 2012, when the USDA upheld the 2011 wetland certification on administrative appeal. Doc. 37 at 2–4. Foster responds with two arguments. First, he claims that a statute of limitations defense is nonjurisdictional, and therefore Defendants waived this defense by failing to raise it in their answer. Doc. 39 at 17; see Day v. McDonough, 547 U.S. 198, 199 (2006) (stating that "[a] statute of limitations defense is not jurisdictional"). Second, Foster argues that his cause of action accrued in 2020 when Defendants

9

denied his petition to review the 2011 wetland certification, and therefore 28 U.S.C. § 2401(a) does not bar his claim. Doc. 36 at 37; Doc. 39 at 19–20.

"Generally, a motion to dismiss may be granted when a claim is barred under a statute of limitations. . . . In order for a party to avail itself of this defense, the party must specifically plead the defense in its answer. However, while this failure would normally result in the waiver of a limitations defense, . . . we recognize that when it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (cleaned up and citations omitted); see also Wycoff v. Menke, 773 F.2d 983, 984–85 (8th Cir. 1985). Here, the site was first certified as a wetland under the Swampbuster Act almost two decades ago in 2004. Doc. 1 at 2; Doc. 35 at 4. Therefore, it is clear from the face of the complaint that the statute of limitations period has run, and this Court may properly consider Defendants' statute of limitations defense as pled in their motion to dismiss.

Further, Foster's claim that his cause of action challenging the constitutionality of the Swampbuster Act accrued in 2020 ignores the lengthy factual and procedural history of this most recent case. Foster would have become aware, or with due diligence should have become aware, of any alleged unconstitutionality of the Swampbuster Act no later than when the site was initially certified as a wetland under the Swampbuster Act in 2004, and certainly no later than 2013 when he brought an action in federal district court challenging the 2011 certification based on the Swampbuster Act. Foster, No. CIV. 13-4060-KES, 2014 WL 5512905, at *1. Foster did not bring his claim that the Swampbuster Act is unconstitutional until over six years later in May 2021. Therefore, Foster's constitutional claims appear barred by 28 U.S.C. § 2401(a). See Burt Lake Band of Ottawa & Chippewa Indians v. Zinke, 304 F. Supp. 3d 70, 74–75 (D.D.C. 2018) (holding

10

that § 2401(a) applies to constitutional claims and, as "a jurisdictional condition attached to the government's waiver of sovereign immunity . . ., must be strictly construed").

Even if Foster's constitutional claims were not barred, courts have affirmed that the Swampbuster Act is within Congress's Article I § 8 spending power. "The Constitution empowers Congress to lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." South Dakota v. Dole, 483 U.S. 203, 206 (1987) (citation omitted). "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." Id. (cleaned up and citation omitted). Congress's spending power is limited in that "the exercise of the spending power must be in pursuit of the general welfare. . . . In considering whether a particular expenditure is intended to serve general public purposes, courts should defer substantially to the judgment of Congress." Id. (cleaned up and citations omitted). In United States v. Dierckman, the United States Court of Appeals for the Seventh Circuit explained that the Food Security Act—and the provisions of the Swampbuster Act in particular— were enacted under the spending power and rejected an argument that the Food Security Act violated the Commerce Clause, stating: "the argument falters because it assumes that the [Food Security Act] is a creature of the Commerce Clause. The [Food Security Act] is not an exercise of direct regulatory power; instead, the [Food Security Act] conditions the receipt of USDA farm benefits on the preservation of wetlands. *This is indirect regulation invoking the spending power and is not limited by the enumeration of Congressional powers in Article I, section 8 of the Constitution.*" 201 F.3d 915, 922 (7th Cir. 2000) (emphasis added) (citing Dole, 483 U.S. at 207).

Additionally, the Swampbuster Act does not violate the Tenth Amendment, which states: "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Under the Tenth Amendment, "[n]o matter how powerful the federal interest involved, the Constitution simply does not give Congress the authority to require the States to regulate. The Constitution instead gives Congress the authority to regulate matters directly and to pre-empt contrary state regulation." New York v. United States, 505 U.S. 144, 178 (1992). "The Tenth Amendment . . . has been consistently construed as not depriving the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end." F.E.R.C. v. Mississippi, 456 U.S. 742, 766 (1982) (cleaned up and citation omitted); see also Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 286 (1981) ("Congressional power over areas of private endeavor, even when its exercise may pre-empt express state-law determinations contrary to the result that has commended itself to the collective wisdom of Congress, has been held to be limited only by the requirement that the means chosen by Congress must be reasonably adapted to the end permitted by the Constitution." (cleaned up and citation omitted)). Here, the Swampbuster Act is within Congress's Article I § 8 spending power and does not infringe upon state sovereignty by requiring states to implement a federal program, statute, or regulation. See F.E.R.C., 456 U.S. at 765–66 (rejecting a Tenth Amendment challenge to a federal statute when the statute did not "directly compel[]" a state to enact a legislative program and thereby impair the state's ability to function independently). Defendants are entitled to summary judgment on Foster's count seeking declaratory relief that the Swampbuster Act is unconstitutional.

**B. Whether 7 C.F.R. § 12.30(c)(6) Contravenes the Congressional Review Act**

12

Foster's second claim seeks declaratory relief that 7 C.F.R. § 12.30(c)(6) does not comply with the Congressional Review Act (CRA), 5 U.S.C. § 801, and is therefore unlawful. Doc. 1 at 22–23; Doc. 36 at 26–33.  In March 1996, Congress enacted the CRA, which requires federal agencies to submit administrative rules to Congress before enacting those rules. 5 U.S.C. § 801. Congress may then submit a joint resolution disapproving of the rule if certain provisions of the CRA are satisfied. 5 U.S.C. § 802. The CRA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ." 5 U.S.C. § 804; 5 U.S.C. § 551.  5 U.S.C. § 805 of the CRA states that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805.

Foster argues that 7 C.F.R. § 12.30(c)(6), which restricts the circumstances in which a party may request review of a wetland certification, was not submitted to Congress pursuant to the CRA and is therefore invalid. Doc. 1 at 22–23; Doc. 35 at 6–7; Doc. 36 at 26–35; Doc. 38 at 10; Doc. 39 at 13–15. Foster asserts that if 7 C.F.R. § 12.30(c)(6) is unenforceable, then Defendants were required to accept his 2017 and 2020 requests to review the 2011 certification under 16 U.S.C. § 3822(a)(4). Doc. 1 at 23. Defendants respond that this claim is barred because the CRA does not waive sovereign immunity to challenge 7 C.F.R. § 12.30(c)(6) on these grounds. Doc. 22 at 14–15; Doc. 37 at 7–8.

"Congress is generally free to limit the jurisdiction of federal courts." Ctr. for Biological Diversity v. Bernhardt, 946 F.3d 553, 563 (9th Cir. 2019) (citing United States v. Hudson, 7 Cranch 32, 33 (1812)). "But in order to do so, Congress must enact a statute that provides 'clear and convincing evidence that Congress intended to deny' access to judicial review." Id. (quoting Bd.

13

of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991)). "A statute provides such clear and convincing evidence, 'and the presumption favoring judicial review [is] overcome, whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme.'" Id. (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 351 (1984)).

Most courts examining 5 U.S.C. § 805 have determined that it is a "Jurisdiction-Stripping Provision" that "bars judicial review." Id. (collecting cases); see Kansas Nat. Res. Coal. v. U.S. Dep't of the Interior, 382 F. Supp. 3d 1179, 1183–85 (D. Kan. 2019) (explaining that most courts have found 5 U.S.C. § 805 precludes judicial review while "[o]nly two district court cases specifically have found that § 805 does not preclude relief when an agency fails to submit a rule to Congress under the CRA"). For instance, the Tenth Circuit has held that "the plain language of § 805" denies a court subject matter jurisdiction over a claim that an agency failed to submit an administrative rule to Congress prior to its enactment as required by § 801(a)(1)(A) of the CRA. Kansas Nat. Res. Coal. v. United States Dep't of Interior, 971 F.3d 1222, 1235 (10th Cir. 2020). Likewise, the Ninth Circuit has held § 805 "deprived [it] of jurisdiction to review any claim challenging a 'determination, finding, action, or omission' under the CRA," including a failure to comply with 5 U.S.C. § 801. Bernhardt, 946 F.3d at 562–63 (quoting 5 U.S.C. § 805).

An agency's alleged failure to submit an administrative rule to Congress, such as 7 C.F.R. § 12.30(c)(6), is an omission under 5 U.S.C. § 801 of the CRA. Therefore, the plain language of 5 U.S.C. § 805—that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review"—bars this Court from exercising jurisdiction over Foster's claim that 7 C.F.R. § 12.30(c)(6) was enacted in violation of the CRA. 5 U.S.C. § 805; see Kansas Nat. Res. Coal., 382 F. Supp. 3d at 1183–85 (holding 5 U.S.C. § 805 precluded judicial review of a claim that a Fish and Wildlife agency rule was invalid because the rule was not submitted to Congress

as required by 5 U.S.C. § 801); <u>Montanans For Multiple Use v. Barbouletos</u>, 568 F.3d 225, 229 (D.C. Cir. 2009) (holding 5 U.S.C. § 805 precluded judicial review of a forest management plan that the plaintiffs alleged was not submitted to Congress in compliance with 5 U.S.C. § 801(a)(1)(A)).  Defendants are entitled to summary judgment on Foster's second count seeking declaratory relief that 7 C.F.R. § 12.30(c)(6) is invalid and unenforceable.

### C.  Whether 7 C.F.R. § 12.30(c)(6) violates the Swampbuster Act and the Due Process Clause

Next, Foster alleges that 7 C.F.R. § 12.30(c)(6) violates 16 U.S.C. § 3822(a)(4) by limiting a review of a wetland certification to "only [when] a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or [when] NRCS concurs with an affected person that an error exists in the current wetland determination." Doc. 1 at 23–25; 7 C.F.R. § 12.30(c)(6).  As discussed, 16 U.S.C. § 3822(a)(4) concerns the "Duration of Certification" and states that once an area is certified as a "wetland" under the Swampbuster Act, that certification remains valid and enforceable "as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4).  Foster claims that because 16 U.S.C. § 3822(a)(4) does not discuss any restrictions on requesting a final certification review, the statute implicitly imposes a mandatory duty on agencies to conduct a review and issue a new certification every time an aggrieved party requests such a review. Doc. 1 at 23–25.  Foster also argues that 7 C.F.R. § 12.30(c)(6) violates the due process clause by restricting review of wetland certifications.[2] Doc. 1 at 24–25; Doc. 36 at 24–26.

---

[2] In the complaint, Foster does not specify whether he is alleging a substantive due process violation or a procedural due process violation. Doc. 1 at 24–25. In Foster's motion for summary judgment, he alleges that 7 C.F.R. § 12.30(c)(6) violates his procedural due process rights. Doc. 36 at 24–26.

"[W]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. . . . First, applying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . But if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." City of Arlington v. F.C.C., 569 U.S. 290, 296 (2013); see also Mayo Clinic v. United States, 997 F.3d 789, 792 (8th Cir. 2021). "Generally speaking, the language in the [the Swampbuster Act], just as in any statute, is to be given its ordinary meaning." Mayo Clinic, 997 F.3d at 793 (citation omitted). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Id. at 794 (citation omitted).

Here, the question is whether Congress imposed any restrictions on how often or under what circumstances a party may request a review of a final certification, or if Congress required an agency to repeat the certification process whenever an unsatisfied party requests a review. Section 3822(a)(4) does not address any restrictions on when a party can request a review, much less impose a nondiscretionary duty on an agency to repeat the certification process whenever requested to do so by an unsatisfied party. 16 U.S.C. § 3822(a)(4). The other provisions of the Swampbuster Act also do not address or set forth any requirements for requesting review of a wetland certification. See 16 U.S.C. §§ 3801, 3821–3824. Because the Swampbuster Act is silent on the requirements for requesting review of a wetland certification, the question becomes whether 7 C.F.R. § 12.30(c)(6) is a permissible interpretation of 16 U.S.C. § 3822(a)(4). See City of Arlington, 569 U.S. at 296.

"In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." Nat'l Muffler Dealers Ass'n v. United States, 440 U.S. 472, 477 (1979); see also Mayo Clinic, 997 F.3d at 794. "When an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations. . . . We have interpreted this deference as amounting to controlling weight unless the regulation is arbitrary, capricious, or manifestly contrary to the statute." Clark v. U.S. Dep't of Agric., 537 F.3d 934, 939 (8th Cir. 2008) (cleaned up and citation omitted). When possible, courts should also seek to harmonize statutes and agency regulations. See, e.g., Carmichael v. The Payment Ctr., Inc., 336 F.3d 636, 640 (7th Cir. 2003) (stating "[a] statute and its implementing regulations should be read as a whole and, where possible, afforded a harmonious interpretation"); Powell v. Heckler, 789 F.2d 176, 179 (3d Cir. 1986) (stating that "statutes and regulations should be read and construed as a whole and, wherever possible, given a harmonious, comprehensive meaning"); McCuin v. Sec'y of Health & Human Servs., 817 F.2d 161, 168 (1st Cir. 1987) (stating that, "[i]n interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions").

Here, 7 C.F.R. § 12.30(c)(6) is easily reconciled with 16 U.S.C. § 3822(a)(4) and the other provisions of the Swampbuster Act. 7 C.F.R. § 12.30(c)(6) merely restricts the circumstances in which an agency must review a final certification to when it receives information that (1) the final certification was no longer reliable due to changes in natural conditions, or (2) the NRCS agrees with the party requesting review that the final certification is no longer accurate. 7 C.F.R. § 12.30(c)(6). 7 C.F.R. § 12.30(c)(6) does not contradict any provision of the Swampbuster Act and is rationally related to promoting efficiency in the certification review process. See West v.

17

Bergland, 611 F.2d 710, 725 (8th Cir. 1979) (upholding a regulation that was "unchallenged" for decades, "reasonably designed to preserve the integrity and reliability of" a government agricultural program, and was "not inconsistent either with an express statutory provision or with the agriculture laws taken as a whole").

Additionally, 7 C.F.R. § 12.30(c)(6) does not violate the due process clause. "To have a property interest in a benefit," protected by the due process clause, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Such entitlements are, of course, not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Keating v. Nebraska Pub. Power Dist., 660 F.3d 1014, 1017 (8th Cir. 2011) (citations omitted). "The requirements of procedural due process apply only to governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." United States v. Long, 977 F.2d 1264, 1276 (8th Cir. 1992) (cleaned up and citation omitted); see also Demming v. Hous. & Redevelopment Auth., of Duluth 66 F.3d 950, 953 (8th Cir. 1995). "The relevant consideration for [a procedural due process] analysis is a two-part inquiry. We must determine (1) whether the [Foster was] deprived of a protected interest, and if so, (2) what process was due." Schneider v. United States, 27 F.3d 1327, 1333 (8th Cir. 1994).

Foster has not established that he suffered any due process violation because there is no law or independent source of authority giving Foster a right to certification review upon request. As discussed, 7 C.F.R. § 12.30(c)(6) is a permissible interpretation of 16 U.S.C. § 3822(a)(4) and restricts the circumstances in which a final certification merits review. Thus, 16 U.S.C. § 3822(a)(4) does not create a protected liberty or property interest requiring certification review

upon request.  See also United States v. Dierckman, 41 F. Supp. 2d 870, 878 (S.D. Ind. 1998) (holding "the Food Security Act and its implementing regulations easily clear the substantive due process hurdle," and "[t]he Swampbuster provisions undoubtedly relate to Congress' goal of curtailing wetland conversion and do so within Constitutional limits").  Defendants are entitled to summary judgment on Foster's count seeking declaratory relief that 7 C.F.R. § 12.30(c)(6) violates 16 U.S.C. § 3822(a)(4) and the due process clause.

### D. Whether Defendants' Denials of Foster's 2017 and 2020 Requests for Review were Arbitrary and Capricious under the APA

Next Foster argues Defendants' refusal to accept his 2017 and 2020 requests to review the 2011 wetland certification were arbitrary and capricious, and therefore should be set aside under the Administrative Procedure Act (APA).  Doc. 1 at 25–27.  Foster's claim rests on the premise that 16 U.S.C. § 3822(a)(4) requires an agency to repeat the certification process whenever an aggrieved party requests review of a final certification.  Doc. 1 at 25–27.  Alternatively, Foster argues his 2020 review request should have been accepted pursuant to 7 C.F.R. § 12.30(c)(6) because it was accompanied by an engineering report stating the site was an artificial wetland. Doc. 1 at 25–27.

"The APA waives the United States' sovereign immunity in either one of two ways[:]" 5 U.S.C. § 702 and 5 U.S.C. § 704.  Wright v. Langdeau, 158 F. Supp. 3d 825, 833–34 (D.S.D. 2016); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990) (discussing avenues for relief under 5 U.S.C. § 702 and 5 U.S.C. § 704).  If a party has established either 5 U.S.C. § 702 or 5 U.S.C. § 704 waives sovereign immunity for its claim, the reviewing court shall review the agency action and "shall set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'"  Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 792 (8th Cir. 1996) (cleaned up) (quoting 5 U.S.C. § 706(2)(A)); 5 U.S.C.

§ 706. Foster brings this claim under both 5 U.S.C. § 702 and 5 U.S.C. § 704, and this Court will address each statute in turn. Doc. 1 at 3, 17.

First, 5 U.S.C. § 702 waives sovereign immunity for a person seeking injunctive relief who "suffer[ed] legal wrong because of agency action, or [was] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Section 702's waiver of sovereign immunity "contains two separate requirements: 1) the person claiming a right to review must identify some agency action, and 2) the party seeking review must show that he has suffered a legal wrong or been adversely affected by that action within the meaning of a relevant statute." Preferred Risk Mut. Ins. Co., 86 F.3d at 792. An "agency action" is defined "as the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Lujan, 497 U.S. at 882 (cleaned up and citation omitted). "A legal wrong is any invasion of a legally protected right." Smith v. U.S. Dep't of Agric., 888 F. Supp. 2d 945, 954 (S.D. Iowa 2012) (citing Preferred Risk Mut. Ins. Co., 86 F.3d at 793 n.5). "[T]o be adversely affected or aggrieved within the meaning of a statute, the plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Lujan, 497 U.S. at 883 (cleaned up and citation omitted).

Here, Defendants' denials of Foster's 2017 request and 2020 request to review the 2011 wetland certification are agency actions under 5 U.S.C. § 702. However, the second requirement of 5 U.S.C. § 702—requiring the party seeking review to establish that he or she "suffer[ed] legal wrong because of agency action, or [was] adversely affected or aggrieved by agency action within the meaning of a relevant statute"—is not satisfied. 5 U.S.C. § 702. As discussed, Foster's claim that 16 U.S.C. § 3822(a)(4) required Defendants to review the 2011 certification is not supported

by the statutory text. 16 U.S.C. § 3822(a)(4) sets forth the duration of a wetland certification stating that the certification of a wetland endures "as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4). As explained above, 7 C.F.R. § 12.30(c)(6) is a permissible interpretation of 16 U.S.C. § 3822(a)(4) that limits certification review to when "a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or [when] NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6). Therefore, Foster cannot show he suffered a "legal wrong or been adversely affected . . . within the meaning of a relevant statute." Preferred Risk Mut. Ins. Co., 86 F.3d at 792.

A party may also seek relief under 5 U.S.C. § 704 of the APA. Section 704 states that a "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. In these cases, where the "review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA [5 U.S.C. § 704], the 'agency action' in question must be 'final agency action.'" Lujan, 497 U.S. at 882. "Two conditions must be satisfied for an agency action to be "final": First, the action must mark the consummation of the agency's decisionmaking process. . . . The agency's action cannot be tentative or interlocutory in nature. . . . Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Sisseton-Wahpeton Oyate of Lake Traverse Reservation. v. United States Corps of Engineers, 888 F.3d 906, 915 (8th Cir. 2018) (cleaned up and citation omitted). "To constitute a final agency action, the agency's action must have inflicted an actual, concrete injury upon the party seeking judicial review." Id. (cleaned up and citation omitted).

Here, Defendants' denial of Foster's requests for review in 2017 and 2020 were final agency actions. The refusals, after administrative appeals and judicial appeals had been exhausted, barred any further review of the 2011 wetland certification and ensured that the enforcement provisions of the Swampbuster Act remain in place for the .8 acre site at issue. See Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 813 (8th Cir. 2006) (stating that if an "agency has issued a definitive statement of its position, determining the rights and obligations of the parties, that action is final for purposes of judicial review despite the possibility of further proceedings in the agency to resolve subsidiary issues" (cleaned up and citation omitted)).  Therefore, Section 704 waives sovereign immunity for Foster's claim, and this Court now reviews whether Defendants' 2017 and 2020 denials of Foster's requests for review of the 2011 wetland certification were "arbitrary and capricious." See Preferred Risk Mut. Ins. Co., 86 F.3d at 792.

7 C.F.R. § 12.30(c)(6) requires that "a natural event alter[] the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions, or [that] NRCS concur[] with an affected person that an error exists in the current wetland determination" to merit a review of a final certification.  7 C.F.R. § 12.30(c)(6).  Foster does not allege or point to any evidence in the record suggesting that NRCS believed the 2011 wetland certification was erroneous when he brought his requests for review in 2017 and 2020. See Doc. 1 at 25–27; Doc. 36.

In 2017, Foster did not submit any new information suggesting that the natural conditions of the site had changed pursuant to 7 C.F.R. § 12.30(c)(6). See Doc. 1 at 25–27.  Therefore, Defendants' denial of Foster's 2017 review request was not arbitrary or capricious.  Foster's 2020 request for review is a somewhat closer question. Foster submitted a report stating that the wetland was an artificial wetland.  However, NRCS determined that the report did not allege or show the

22

topography of the site had changed such that the 2011 wetland certification was no longer reliable as required by 7 C.F.R. § 12.30(c)(6). Doc. 1 at 17, 25–27; Doc. 24 at 5; Doc. 35 at 6. Neither does Foster allege or show that the report presented information that the topography of the site had changed. Doc. 1 at 16, 25–27; Doc. 24-1 at 22–35; Doc. 35 at 5–6. Rather, the engineering report addressed how the longstanding tree belt affected the topography of the site. Doc. 1 at 16, 25–27; Doc. 24-1 at 22–35; Doc. 35 at 5. Therefore, by all accounts, Defendants' denial of Foster's 2020 request for review complied with 7 C.F.R. § 12.30(c)(6) and was not arbitrary and capricious. Summary judgment for Defendants thus enters on Foster's fourth count seeking to set aside Defendants' denials of his 2017 and 2020 requests for review.

### E.  Claim that the 2011 Wetland Certification is No Longer in Effect

Next, Foster seeks declaratory relief that the 2011 wetland certification is no longer valid due to Foster's 2017 and 2020 requests for review. Doc. 1 at 27. In support, Foster relies on his claim that 16 U.S.C. § 3822(a)(4) sets forth that a final certification is no longer valid whenever an aggrieved party requests review of that certification. As discussed, 16 U.S.C. § 3822(a)(4) governs the duration of a certification and cannot be read to nullify a wetland certification whenever an aggrieved party requests review. See 16 U.S.C. § 3822(a)(4). Instead, because 7 C.F.R. § 12.30(c)(6) is a permissible interpretation of 16 U.S.C. § 3822(a)(4), a wetland certification is subject to review when a qualifying party requests review of the certification and "a natural event alters the topography or hydrology of the subject land to the extent that the final certification is no longer a reliable indication of site conditions," or a qualifying party requests review and the "NRCS concurs with an affected person that an error exists in the current wetland determination." 7 C.F.R. § 12.30(c)(6). Defendants are entitled to summary judgment on Foster's fifth count requesting a declaration that the 2011 wetland certification is no longer in effect.

23

### F. Foster's Motion to Supplement the Administrative Record

After the parties filed cross-motions for summary judgment, Foster filed a motion to supplement the administrative record. Doc. 41. He seeks to add three documents to the administrative record: a letter dated February 19, 2008 from resource conservationist Karen Cameron-Howell; a letter dated April 6, 2009 from NRCS rescinding a 2009 wetland certification of the site; and a letter dated January 15, 2010 from NRCS rescinding a subsequent wetland determination of the site. Doc. 41; Doc. 42 at 1. Foster argues these letters are necessary to resolve disputed issues of fact in the record concerning the review process leading up to the 2011 wetland certification, and these documents are necessary to complete the administrative record. Doc. 42 at 1–2, 6–7; Doc. 46.

Defendants oppose the motion and argue that these letters were properly excluded from the administrative record. Doc. 45 at 2–4. These letters are now part of the record of this Court, so to that extent Foster's motion is granted. However, while these three documents may have significance to the 2011 wetland certification, they do not alter the analysis in this opinion and order.

### IV.   Conclusion and Order

For the reasons discussed, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, or in the alternative Defendants' Motion to Dismiss for Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim, or Motion for Judgment on the Pleading, Doc. 21, is granted. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 34, is denied. It is finally

ORDERED that Plaintiff's Motion to Complete or Supplement the Record, Doc. 41, is

granted to the extent that the three documents are now part of this Court's CM/ECF record for any appeal that Plaintiff may wish to file.

DATED this 1st day of July, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE